UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SCANNED

LEISA YOUNG, in her Capacity as Administratrix of the Estate of Cornel Young, Jr.

vs. C.A. No. 01-288 S

CITY OF PROVIDENCE, by and through its Treasurer, STEPHEN NAPOLITANO, URBANO PRIGNANO, JR., individually and in his official capacity as Providence Chief of Police; RICHARD SULLIVAN, individually, JOHN RYAN, individually and KENNETH COHEN, individually

## DEFENDANTS URBANO PRIGNANO AND RICHARD SULLIVAN'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants URBANO PRIGNANO ("Prignano") and RICHARD SULLIVAN ("Sullivan") submit the following Memorandum in support of their Motion for Summary Judgment as to Counts II and III of the First Amended Complaint (the "Complaint") of plaintiff, LEISA YOUNG, in her capacity as Administratrix of the Estate of Cornel Young, Jr. ("Young" and "Cornel," respectively).

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Summary judgment should enter in Prignano's favor as to Count II under the doctrine of qualified immunity pursuant to the three-part algorithm applicable to such claims announced by the First Circuit in Savard v. State of Rhode Island, 338 F.3d 23, 27 (1st Cir. 2003) and recently clarified by the Supreme Court in Brosseau v. Haugen, 125 S.Ct. 596, 599-600, 160 L.Ed.2d 583 (2004).

Although the jury's phase-one verdict finding that Providence police officer Michael Solitro ("Solitro") violated Cornel's constitutional rights effectively answers the first part of the Savard algorithm in a manner favorable to the plaintiff, the answer to parts two and three dictate that Prignano's claim of qualified immunity be upheld.

As to part two, the constitutional right that the jury found had been violated was not "clearly established" at the time of the shooting since the absence of case law as to: (a) the right to be free from so-called "friendly fire" and (b) the supervisory claims for failure to train in the area make it clear that Prignano was not provided with "fair warning" that his failure to provide appropriate training with respect to avoiding on-duty/off-duty misidentifications of fellow officers was "clearly unlawful."

Significantly, during the whole course of the phase-one trial and then on appeal Young has not cited a single case involving so-called friendly fire where supervisory liability was imposed under § 1983 as a result of an alleged failure to train. If Young's experienced counsel has been unable to find a factually similar case after over five years of trying, how could one possibly conclude that Prignano, who is not a lawyer, had received fair warning prior to the incident that the challenged conduct was "clearly unlawful"?

As to part three, Young has failed as a matter of law to show that Prignano was in any relevant respect "plainly incompetent" or in "knowing" violation of the law. There has been no showing of any "pattern of tortious conduct by employees" here such as to justify the imposition of supervisory liability for one isolated incident. Indeed, here, there is not merely a complete lack of evidence as to *similar* prior incidents, there is a complete lack of evidence as to *any* prior incidents, similar or not -- ***this was the first***

***incident involving injury due to friendly fire in the entire history of the Providence Police Department.*** See Defendants' Rule 12.1 Statement of Undisputed Facts, ¶ 1 at 1.

As to Count III, Prignano is no longer employed by the City of Providence and so therefore cannot be sued in his "official capacity." But even if the present Chief of Police were to be substituted, Young has failed to rebut local law and this Court's holding in Sean Patrick, Inc. v. City of Providence, C.A. No. 96-689 L (D.R.I. April 24, 1998) (Lagueux, J.) that the Chief of Police in Providence is not a so-called "final policymaker" within the meaning of Monell, *supra*. Young simply has not presented evidence so as to create a genuine issue of material fact as to the issue.

The argument as to Sullivan is even simpler. Summary judgment is mandated as to Counts II and III in his case because *all* of Young's claims against Sullivan are premised upon his alleged "supervisory responsibility for the screening and selection of academy candidates and for the disciplining of officers," see Young v. City of Providence, 301 F. Supp. 2d 163, 167 (D.R.I. 2004) (Lisi, J.) ("Trial Dec."), and all such claims were dismissed by the trial court, see id. at 184, dismissals which were then affirmed on appeal. See Young v. City of Providence, 404 F.3d 4, 31-32 (1st Cir. 2005) (Lynch, J.) ("App. Dec.").

## II. UNDISPUTED FACTS AND PROCEDURAL HISTORY

The above matter stems from the fatal shooting of an off-duty Providence police officer in January of 2000. Cornel, who was off duty and not in uniform, was at a local restaurant prior to being accidentally shot by two Providence police officers – Solitro and Carlos Saraiva ("Saraiva") – who were on duty and responding to a disturbance at the restaurant.

Young's complaint originally contained nine counts, the first four of which were premised upon alleged § 1983 violations and the latter five of which contained pendent state law claims.

Just prior to the first phase of a bifurcated jury trial, the individual § 1983 claims against Solitro and Saraiva were voluntarily dismissed. See Trial Dec., 301 F. Supp.2d at 169. The jury then returned a verdict finding that Solitro, but not Saraiva, had violated Cornel's constitutional rights. See id. at 187. Young's remaining claims were then dismissed as a matter of law by the trial court. See id. at 188.

The trial court's dismissal of Young's § 1983 claims pertaining to the screening and disciplining of Saraiva and the screening and hiring of Solitro, was affirmed on appeal. See App. Dec., 404 F.3d at 9, 30-31.[1] However, certain of Young's § 1983 claims against the City and Prignano were reinstated pursuant to the First Circuit's decision. See id. at 32.

The § 1983 claims which remain following the appeal include claims against: (1) Prignano and others in their individual capacities for failing to supervise and train Solitro properly with respect to avoiding on-duty/off-duty misidentifications of fellow officers -- the so-called "supervisory claims," see Complaint, Count II at 23-24; and (2) the City of Providence (and Prignano in his official capacity) under Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) for developing and maintaining allegedly inadequate customs, policies and practices in the same area -- the so-called "Monell claims." See Complaint, Counts III and IV at 26-27.[2]

---

[1] Young did not appeal the dismissal of the pendent state law claims by the trial court and thus has waived the claims. See App. Dec., 404 F.3d at 12, n.3.

[2] The Monell claims in Count III - against the City and Prignano in his official capacity - and Count IV - against Prignano as a so-called "final policymaker" - were considered as "functionally identical" by the

**The Supervisory Claims**

The remaining supervisory claims against Prignano relate to the training of Solitro in the area of avoiding on-duty/off-duty misidentifications of fellow officers. See App. Dec., 404 F.3d at 10-11, 27. Specifically, Young has alleged that Prignano:

> acted with reckless disregard and deliberate indifference in failing to adequately train . . . Solitro 'concerning the known risks of taking police action while off duty, including, without limitation, the known risk of misidentifying and shooting off duty police officers, particularly African-American and Hispanic officers' and that such conduct caused the fatal shooting of Cornel Young.

Trial Dec., 301 F.Supp.2d at 183, *quoting* Complaint, ¶ 113 at 24. These supervisory claims were remanded by the court on appeal, without comment. See App. Dec., 404 F.3d at 10.[3]

**The Monell Claims**

In reversing the District Court's grant of summary judgment as to the Monell claims against the City and Prignano in his official capacity, the First Circuit noted that the City's failure to provide "particularized training on avoiding off-duty misidentifications" together with the implementation of an "always armed/always on duty policy" created a jury question on the issue of whether or not the City had been "deliberately indifferent" to the likelihood and consequences of a so-called friendly fire shooting, and thus liable under Monell. See App. Dec., 404 F.3d at 28-29.[4]

---

trial court. See App. Dec., 404 F.3d at 10, n.1. The experience of the person in charge of the Police Training Academy as well as some of the relevant training provided to police officers at the Academy and elsewhere have been detailed in Defendant's Rule 12.1 Statement of Undisputed Facts at ¶¶ 3-5.

[3] Similar claims pertaining to Cornel and Saraiva were mooted by, respectively, the trial court's ruling (affirmed on appeal) that Cornel had no constitutional right to training and by the jury's verdict that Saraiva had not violated Cornel's constitutional rights.

[4] The Supreme Court held in Monell that a municipality can be held liable under section 1983 when: "'the execution of a government's policy or custom . . . inflicts the injury' and is the 'moving force' behind the constitutional violation . . ." App.Dec., 404 F.3d at 25, *citing* Monell, 436 U.S. at 694. As will be discussed, see *infra* at 13-15, when (as here) a failure to train is the basis of an alleged Monell claim,

## III. ARGUMENT

### A. Prignano Is Immune from Suit Under the Doctrine of Qualified Immunity and Therefore Is Entitled to Summary Judgment as to Count II

In its partial reversal of Judge Lisi's decision, the Court of Appeals for the First Circuit made clear that "the district court never dealt with qualified immunity issues . . .." See App. Dec., 404 F.3d at 32. The issues are thus ripe for decision.

In Savard v. State of Rhode Island, 338 F.3d 23, 27 (1st Cir. 2003), the First Circuit noted that: "the fundamental justification for the qualified immunity defense is that public officials performing discretionary functions should be free to act without fear of punitive litigation except when they fairly can anticipate that their conduct will give rise to liability for damages." 338 F.3d at 28 (citations omitted).

As the Supreme Court noted in Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001): "[w]here the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the cost and expenses of trial are avoided where the defense is appropriate," id., a point which is compelling here even though it is the added cost and expense relative to a *second* trial which Prignano seeks to avoid.[5]

The First Circuit has emphasized that "the inquiry into qualified immunity is separate and distinct from the inquiry into the merits. Consequently, courts are well-advised to separate 'qualified immunity' analysis from 'merits' analysis whenever

---

liability can attach only when: "'the failure to train amounts to deliberate indifference . . .'" Id. at 26, *citing* City of Canton v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

[5] As the Court noted in Mitchell v. Forsyth, 472 U.S. 511, 526-27, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985): "[t]he entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id..

practicable." Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998). As the Circuit noted in Collins v. Marina-Martinez, 894 F.2d 474, 478 (1st Cir.1990).

> Because qualified immunity does not address the substantive viability of [the asserted] claim, but rather the objective reasonableness of a defendant's actions, a plaintiff who is entitled to prevail on the merits is not necessarily entitled to prevail on the issue of qualified immunity.

Id.

The cases also make clear that "once raised, the plaintiff has the burden to rebut the qualified immunity defense." See Davis v. City of North Richmond Hills, 406 F.3d 375, 380 (5th Cir. 2005), *citing* Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

Finally, in Savard, *supra*, the First Circuit held that "the degree to which the law was 'clearly established' as of a particular date is a matter for the court to determine," 338 F.3d at 278, but also recognized that the there may be genuine issues of material fact for the jury bearing on the question of "objective reasonableness." Id.[6] As was noted in Amsden v. Moran, 904 F.2d 748, 752 (1st Cir. 1990):

> Where a qualified immunity defense is advanced by pretrial motion, 'normal summary judgment standards' control. Rogers v. Fair, 902 F.2d 140, 142 (1st Cir.1990); see also Unwin v. Campbell, 863 F.2d 124, 132 (1st Cir.1988). Hence, summary judgment is proper only
>
> > 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'
>
> Fed.R.Civ.P. 56(c).

Id.. The Supreme Court in Saucier, *supra*, is instructive in this context and noted that:

[6] In fact, there is a split in the Circuits as to whether decisions as to the applicability of the doctrine are a matter for the court or the jury. The First Circuit is in agreement with the Third, Fourth, Seventh and Eleventh Circuits on this issue. See Carlswell v. Borough of Homestead, 381 F.2d 235, 242 and n.2 (3d Cir. 2004).

> to deny summary judgment any time a material issue of fact remains on the excessive force claim - -could undermine the goal of qualified immunity to 'avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.' (citation omitted). If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.

533 U.S. at 203 (citation omitted)..

**1. The First Circuit's Three-Part Algorithm**

The First Circuit employs what it has characterized as a three-part algorithm to analyze qualified immunity questions. As Judge Selya noted in Savard, *supra:* "[w]here, as here, a party's entitlement to summary judgment hinges on a claim of qualified immunity, we must balance the need to vindicate constitutional rights against the need to insulate public officials from civil litigation that might unduly inhibit the assiduous discharge of their duties." 338 F.3d at 27, citing Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Judge Selya then set forth the three-part algorithm:

- The threshold question is whether the plaintiffs have established a constitutional violation. Hope v. Pelzer, 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).
- The second question deals with fair warning; it asks whether the law was clearly established at the time of the constitutional violation. Hope, 536 U.S. at 739-41, 122 S.Ct. 2508; Anderson, 483 U.S. at 638-40, 107 S.Ct. 3034.
- The final question is whether a reasonable official, situated similarly to the defendant(s), would have understood that the conduct at issue contravened the clearly established law. Saucier, 533 U.S. at 202, 121 S.Ct. 2151.

Savard, 338 F.3d at 27.

Here, the answer to the "threshold question" in Savard is in the affirmative. The jury in phase-one found that Solitro had in fact violated Cornel's constitutional rights, and that verdict was upheld on appeal. See App. Dec., 404 F.3d at 21. By the same token, by absolving Saraiva the jury highlighted the fact that neither the constitutional violation itself nor the illegality of Prignano's conduct was "clearly established."

The second and third parts of the Savard algorithm, are, in effect, a restatement of the "two-prong" qualified immunity test announced in Camilo-Robles v. Hoyos, 151 F.3d 1 (1st Cir. 1998), which was cited by the court on appeal here. As held in Camilo-Robles, a plaintiff may avoid a qualified immunity defense and hold a defendant liable under § 1983 by virtue of his or her supervisory authority over a subordinate who allegedly violated a constitutional right of the plaintiff only if:

> (1) the subordinate's actions violated a ***clearly established*** constitutional right, and (2) it was ***clearly established*** that a supervisor would be liable for constitutional violations perpetrated by his subordinates in that context.

Id. at 6 (emphasis added); see also Poe v. Leonard, 282 F.3d 123, 134 (2d Cir.2002) (agreeing with the two-prong test in Camilo-Robles and characterizing the second prong as requiring the plaintiff to show that the 'supervisory liability doctrine under which the [plaintiff] wishes to hold [the supervisor] liable' was clearly established).[7]

[7] Here, the First Circuit suggested that there was a "third prong" to the Camilo-Robles test, i.e., whether the supervisor's actions were "objectively reasonable." See App. Dec., 404 F.3d at 32. Although in effect functioning as a "third prong," the test of objective reasonableness is, strictly speaking, merely another way of framing the inquiry as to whether the constitutional right in question has been "clearly established" from the standpoint of a reasonable supervisor, rather than solely from the perspective of the case law.

Of course, the facts of Camilo-Robles - where claims of qualified immunity were denied police supervisors who had re-armed and helped put an officer back to work who then shot and killed an individual while executing a no-knock search and arrest warrant - bears slight resemblance to the facts here. As one court noted: "[i]n Camilo-Robles, the court recounted a subordinate officer's service record, terming it 'a career to make St. Sebastian weep.' The subordinate had a known history of assaulting his wife, holding hostages at gunpoint at the police station, assaulting another civilian, and shooting two law-abiding neighborhood residents (one of them died)." See Davis v. City of North Richland Hills, 406 F.3d 375, 385 (5th Cir. 2005).

As evidenced by the jury's finding that Saraiva did not violate Cornel's constitutional rights, Young has not met the burdens of proof imposed by the second and third parts of the Savard algorithm as a matter of law inasmuch as:

(1) applicable law at the time of the shooting did not provide Prignano with "fair warning" that his conduct was clearly illegal; and (2) Young has failed to establish that Prignano's conduct was in any relevant respect "plainly incompetent" or that he had "knowingly" violated the law. Put in the context of the two prongs of Camilo-Robles, Young has failed to establish *either* that the constitutional violation itself, *or* Prignano's potential liability, was "clearly established."

**a. The Second Part of the Algorithm – "Fair Warning": Prignano Was Not Provided with Adequate Notice that his Conduct was "Clearly Unlawful"**

In Savard, the court commented upon the application of the second part of its algorithm by noting that:

> An inquiry into the reasonableness of an officer's conduct must focus on the discernible contours of the law at the time of the alleged act or omission. Hatch v. Dep't. for Children, Youth and Families, 274 F.3d 12, 22-23 (1st Cir. 2001). To attain the necessary perspective, an inquiring court must look back in time and conduct the judicial equivalent of an archeological dig. The court must canvass controlling authority in its own jurisdiction and, if none exists, attempt to fathom whether there is a consensus of persuasive authority elsewhere.

338 F.3d at 28. And the court made clear that: "the degree to which the law was clearly established as of a particular date is a matter for the court to determine." 338 F.3d at 278.

More recently, in reversing the denial of a qualified immunity claim by the Ninth Circuit, the Supreme Court emphasized that in order to overcome a qualified immunity defense a plaintiff must make a "particularized" showing that the right alleged to have

been violated was "clearly established" at the time of the offending conduct. See Brosseau v. Haugen, 125 S.Ct. 596, 599-600, 160 L.Ed.2d 583 (2004).

In Brosseau, a police officer shot a defendant in the back as he was attempting to flee in his car. The officer's motion for summary judgment as to the defendant's § 1983 action for the use of excessive force was granted by the district court on grounds of qualified immunity, and then reversed on appeal, where the Ninth Circuit noted that the defendant's right to be free from excessive force had been "clearly established." See Brosseau v. Hagen, 339 F.3d 857, 865 (9th Cir. 2003), *rev'd. and remanded*, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004).

The Supreme Court reversed, noting that the Court of Appeals had improperly focused on the generalized, albeit "clearly established," state of the law concerning the use of excessive force rather than on the "more particularized" facts relating to the particular conduct at issue.[8]

The Court in Brosseau stated that:

> It is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' Saucier, 533 U.S. at 201. As we previously said in this very context: 'There is no doubt that Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) clearly established the general proposition that the use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. Yet that is not enough. Rather we emphasized in Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034,

---

[8] The Ninth Circuit made the exact same error in Jensen v. City of Oxnard, 145 F.3d 1078, 1085 (9th Cir. 1998), a rare friendly fire case where the court denied a motion for summary judgment based on qualified immunity by improperly focusing on the clarity of the plaintiff's constitutional right to be free from unreasonable seizure at the time he was killed rather than upon whether the illegality of the particular conduct at issue had been "clearly established." Id. The other Ninth Circuit friendly fire case which may be cited by Young - Wilkins v. City of Oakland, 350 F.2d 949 (9th Cir. 2003) – is not useful here. Wilkins not only pre-dated Brosseau, *supra*, but also: (i) the shooting in Wilkins (which occurred on January 11, 2001) and the decision (filed November 20, 2003) both occurred well after the Young incident and thus could not have provided "fair warning" to anyone here, see id. at 949, 952; and (ii) the case does not concern supervisory liability but the objective reasonableness of the conduct of the officer actually involved in the shooting. See id. at 954-55.

> 97 L.Ed.2d 523 (1987): 'that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense. The contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right.' 483 U.S. 635, 640.

125 S.Ct. at 599. Because none of the cases cited to the Court in Brosseau were factually on all fours, the Court concluded that the officer's actions fell in the "hazy border between excessive and acceptable force," and by no means "clearly established" that the conduct in question violated the Fourth Amendment. Id. at 600.

The same is true here. Indeed, as noted, during the whole course of the phase one trial and then on appeal, Young has not cited a single case involving so-called friendly fire where supervisory liability was imposed as a result of an alleged failure to train.

**b. The State of the Law as to Supervisory Liability Under § 1983 at the Time of the Shooting**

Initially, it should be noted that supervisory liability under § 1983 may not be predicated upon a theory of respondeat superior. Gutiérrez-Rodríguez v. Cartagena, 882 F.2d 553, 562 (1st Cir.1989). A supervisor may be found liable only on the basis of his own acts or omissions. Bowen v. City of Manchester, 966 F.2d 13, 20 (1st Cir.1992); Gutiérrez-Rodríguez, 882 F.2d at 562 (citing Figueroa v. Aponte-Roque, 864 F.2d 947, 953 (1st Cir.1989)).

In Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir.1994), the First Circuit noted that: "supervisory liability does not require a showing that the supervisor had actual knowledge of the offending behavior; he 'may be liable for the foreseeable consequences of such conduct if he would have known of it but for his ***deliberate indifference or willful blindness.'"*** Id. (emphasis added). To prove the requisite "deliberate indifference" or "willful blindness," a plaintiff must show not only:

(1) a grave risk of harm; but also (2) the defendant's actual or constructive knowledge of that risk; and (3) his failure to take easily available measures to address the risk. See Manarite v. City of Springfield, 957 F.2d 953, 956 (1st Cir. 1992).

Thus, even if one were to assume for argument's sake that there was a grave risk of harm associated with the training failures alleged by Young, she also must establish that Prignano had actual or constructive knowledge of this grave risk in the complete absence, not only of any prior *similar* incidents, but in the complete absence of *any* incidents, similar or not, involving friendly fire, and this Young has manifestly failed to do.

If Young's experienced counsel could not find a case on point *after* the shooting, it is hard to see how Prignano could have been aware of the risk prior to the incident, yet that must be the gist of Young's argument in attempting to avoid his qualified immunity defense. The words of the Tenth Circuit are apt:

> the fact that someone with an opportunity to prepare an expert report at leisure opines that well-trained officers would have performed differently under pressure does not rise to the legal standard of deliberate indifference on the part of the City, for [the plaintiff] fails to point to any evidence placing the City on actual or constructive notice that the asserted failures to train were substantially certain to result in a constitutional violation.

Carr v. Castle, 337 F.3d 1221, 1230 (10th Cir. 2003).

The need for evidence "clearly establishing" notice was emphasized by the Supreme Court in Board of County Commissioners v. Brown, 520 U.S. 397, 408, 117 S.Ct. 1382, 137 L.Ed.2d 626 (U.S. 1997) where the plaintiff, who was injured after excessive force was employed during an arrest, claimed that the county sheriff was liable for having negligently hired the offending party, relying on evidence that the sheriff had failed to perform an adequate background check before hiring the arresting officer. See

id. at 401. In rejecting the claim, the Court analogized to inadequate training cases like this one and held that a qualified immunity defense should not be defeated until "a pattern of tortious conduct by inadequately trained employees" makes the need for further training "plainly obvious." See id. at 407-08.

Again, comparing Young's theory of her case with that of the plaintiffs in Brown, it is apparent that Prignano is immune from suit. Here, there simply was no "pattern of tortious conduct by inadequately trained employees." See, e.g., City of Oklahoma v. Tuttle, 471 U.S. 808, 824, 105 S.Ct. 2427, 85 L.Ed2d 791 (1985) (single incident insufficient to establish liability in absence of facially unconstitutional policy); Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 93 (1st Cir. 1994) (treating as "an important factor . . .whether the supervisor was put on notice of behavior which was likely to result in the violation of constitutional rights"); Bordanaro v. McLeod, 871 F.2d 1151, 1161 (1st Cir. 1989) ("a 'single incident' of misconduct, without other evidence, cannot provide the basis for municipal liability under section 1983. Such a result would be the equivalent of imposing respondeat superior liability upon the municipality").

As the Fifth Circuit noted in Davis v. City of North Richland Hills, 406 F.3d 375, 383 (5th Cir. 2005): "[w]hile the specificity required should not be exaggerated, our cases require that the prior acts be fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act have involved injury to a third party." 406 F.3d at 383.

Finally, a showing of "willful blindness" or "deliberate indifference" alone does not equate with supervisory liability - a plaintiff also must show specific causation, see

Maldonado-Denis, 23 F.3d at 582 - and as the Supreme Court has noted, a § 1983 plaintiff may not prevail merely by proving:

> 'that an injury or accident could have been avoided if an officer had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal.'

See Robinson v. Winslow Township, 973 F.Supp. 461, 469 (3rd Cir. 1997), *quoting* City of Canton, 489 U.S. at 391.[9]

In short, in Savard, *supra*, the First Circuit made clear that to ascertain whether a constitutional right has been "clearly established," a court must first look to controlling authority in its own jurisdiction. 338 F.3d at 28. There is no such authority with respect to "friendly fire" incidents involving police officers or supervisors in the First Circuit. A court must then look for a consensus of persuasive authority elsewhere. Id. Again, there is no such persuasive authority.

Thus, neither the right to be free from friendly fire or the failure of a supervisor to train in the area of friendly fire was "clearly established" at the time of the shooting here. The qualified immunity analysis need go no further and summary judgment should be granted in Prignano's favor as to Counts II and III.

[9] Indeed, from a causal standpoint it is interesting to note that although Young's expert opined that Solitro's act in unnecessarily leaving a position of cover was "a direct and proximate cause of Officer Young's death," see App. Dec., 404 F.3d at 11, the First Circuit explicitly noted that Young: "made no argument that the City failed to train on issues of cover." See id. at 22, n.6.

**c. The Third Part of the Algorithm - Objective Reasonableness: Young Has Failed to Show that Prignano Was in Any Relevant Respect "Plainly Incompetent" or had "Knowingly" Violated the Law**

As formulated by the court in Savard, *supra*: "the final question is whether a reasonable official, situated similarly to the defendants, would have understood that the conduct at issue contravened clearly established law." 338 F.3d at 27. As the Supreme Court noted in Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the court needs to determine: "whether it would be clear to a reasonable [supervisor] that his conduct was unlawful in the situation he confronted." Id.. And the First Circuit has made clear that even when the relevant law is "clearly established" (which, as noted, is *not* the case here), reasonable mistakes are a defense to liability.

As the court noted in Savard: "[t]he law does not expect a public official, faced with the need to make an objectively reasonable real-world judgment, to anticipate precisely the legal conclusions that will be reached by a panel of federal appellate judges after briefing, arguments, and full fledged review." 338 F.3d at 30, *citing* Wilson v. Layne, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); see also Saucier, 533 U.S. at 205 (if mistake as to what law requires is reasonable, officer is entitled to immunity defense).

In short, the required analysis makes room:

> for the inevitable reality that 'law enforcement officials will in some cases reasonably but mistakenly conclude that [their conduct] is [constitutional], and ... those officials--like other officials who act in ways they reasonably believe to be lawful--should not be held personally liable. Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.ed.2d 523 (U.S. 1987) (emphasis added); Burns v. Loranger, 907 F.2d 233, 237 (1st Cir. 1990). In other words, qualified immunity sweeps so broadly that 'all but the plainly incompetent or those who knowingly violate the law' are protected from civil rights suits for money damages. Hunter v. Bryant, 502 U.S. 224, 229,

> 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (*quoting* Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986)); *cf.* Roy v. City of Lewiston, 42 F.3d 691, 695 (1st Cir.1994) ('[T]he Supreme Court's standard of reasonableness is comparatively generous to the police where potential danger, emergency conditions or other exigent circumstances are present.').

Hegarty v. Somerset County, 53 F.3d 1367, 1374 (1st Cir. 1995).

For example, in Manarite, *supra*, the plaintiff, whose son committed suicide in a jail cell by hanging himself with his shoelaces, argued that because of the unusual and recent number of suicide attempts involving shoelaces, the police chief had been "deliberately indifferent" by failing to adequately train officers and insist on a uniform protocol as to the removal of shoelaces. 957 F.2d at 956. The court rejected the argument, noting that:

> given the number of recent shoelace suicide attempts (four), the chief's failure to take immediate corrective steps might well be negligent. But we fail to see how, without more evidence, one could call it 'deliberate indifference.'
>
> Roughly comparable cases support this view. No case finds a supervisor 'deliberately indifferent' (or the like) simply because he does not react when he learns of a significantly increased suicide attempt rate. Courts, including this one, have found supervisors to be deliberately indifferent only where a much fuller record than we have before us shows significantly more culpable behavior (or omissions). See Gutiérrez-Rodriguez, 882 F.2d at 564-66; *cf.* Simmons, 947 F.2d at 1064-65, 1072-75. Where one finds typical suicide prevention policies in place, at least some officer training, and records as empty of additional supporting detail as is this one, courts have consistently found no 'deliberate indifference.' See Belcher, 898 F.2d at 34-36; Edwards, 867 F.2d at 1276; Molton, 839 F.2d at 246-47.

Manarite, 957 F.2d 956 (emphasis added).

Here, of course, unlike in Manarite, there had not been four recent deaths related to the allegedly inadequate training and protocols at issue. Indeed, the complete absence of any prior incidents involving friendly fire makes clear that Prignano was not "plainly

incompetent" or in "knowing" violation of the law, even if one were to assume for argument's sake that there had been absolutely no training in the specific area of avoiding on-duty/off-duty misidentifications of fellow officers. But, as will be discussed, it is beyond dispute that Prignano acted reasonably and that there was in fact training in relevant areas.

With respect to training, Prignano justifiably relied upon defendant John Ryan ("Ryan"), a Captain in the Police Department who was in charge of the Training Academy at all relevant times. See Defendant's Rule 12.1 Statement of Undisputed Facts, ¶ 3. Ryan not only received a law degree in 1994, he also was very experienced and highly qualified to be in charge of the academy.[10] And prior to the Young incident of January 28, 2000, police officers at the Training Academy received a variety of training aimed at avoiding on-duty/off-duty misidentifications of fellow officers. See id. at ¶ 4.

Thus, summary judgment should enter in favor of Prignano as to Count II.

### B. Young's Monell Claim Against Prignano in Count III Must Be Dismissed as Prignano Is Not and Was Not a Final Policy Maker

The doctrine of qualified immunity applies only to the individual claims in Count II and thus admittedly does not apply to Young's claim against Prignano in Count III, which is self-styled as a: "Systemic (Monell) Claim Against the City of Providence and Colonel Urbano Prignano, Jr., In His Official Capacity" and which is explicitly premised upon a finding that Prignano was a so-called "final policymaker." See Complaint at 25.

---

[10]Ryan attended the FBI course offered to Rhode Island Police Officers, the Advanced Tactical Command School in Virginia, the FBI's *Instructor* Development School and the Public Agency Training Council Advanced Internal Affairs course. See id. at ¶ 3(a) – (e) at 2. Ryan also did a "lot of training for the Public Agency Training Council," and has been an adjunct faculty member for nearly the past ten years at Salve Regina University where he taught a variety of courses, including an undergraduate course in criminal procedure, another course in advanced criminal procedure, a graduate course in police misconduct, and a graduate course in police management. Ryan also spoke on a panel at the Georgetown Law Center on racial profiling. See id. at ¶ 3(f) – (g) at 2.

In fact, however, Prignano is not employed by the City and therefore cannot be sued in his "official capacity."

But even if the current Chief of Police were to be substituted for Prignano, Young, who bears the burden of proof on the issue, has failed as a matter of law to establish that Chief of Police was, in fact, a "final policymaker" as to the remaining claims, which all pertain to the supervision and training of Solitro with respect to misidentifying and shooting of off duty police officers.[11] As the Supreme Court noted in Pembaur v. City of Cincinnati, 475 U.S. 469, 479-80, 106 S.Ct. 1292, 89 L.Ed.2d 452(1989), a distinction must be drawn between those municipal officials who are "final" policymakers and those other officials who merely exercise discretion or are just policymakers without final policymaking authority. Id. Young has ignored the distinction as well as the conclusions which necessarily follow from relevant City Charter provisions and caselaw.

Moreover, in City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, (1988), the Court made clear that the question is one for the court rather than the jury. As the Court noted in Praprotnik:

> the identification of policymaking officials is a question of state law. Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law. [citation omitted]. Thus the identification of policymaking officials is not a question of federal law, and it is not a question of fact in the usual sense.

[11] As has been noted, the appeals court did not discuss the separate Monell claim against Prignano other than to note that the trial court had considered it as: "functionally identical to the claims against the City." See App. Dec., 404 F.3d at 10, n.1.

485 U.S. at 124; see also id. at 131 ("We cannot accept either the Court of Appeals' broad definition of municipal policymakers or respondent's suggestion that a jury should be entitled to define for itself which officials' decisions should expose a municipality to liability").

The fact that the issue can sometimes involve factual issues, i.e., when adoption and promulgation of a particular policy has been expressly delegated to a subordinate, does not mean that a genuine issue of material fact as to the issue has been raised here to rebut the presumption derived from the clear language of the City Charter that the Mayor and the City Council are the only final policy makers with respect to the relevant Police Department policies. See Providence City Charter, § 301 (powers and duties of Mayor "to supervise, direct and control the activities of al departments and agencies of city government"); § 1201(c) (authority of department heads "shall be exercised under and subject to the direction of the Mayor"); § 401 (all legislative powers invested in City Council) § 1001 (Police Department subject to Department of Public Safety and its Commissioner).

Indeed, the issue has been addressed by this Court and Judge Lagueux has ruled that the Providence Chief of Police is not a final policymaker with respect to a challenged Police Department policy of prominently stationing a group of police officers at a particular nightclub. (See Sean Patrick, Inc. v. City of Providence, C.A. No. 96-689 L (D.R.I. April 24, 1998) (Lagueux, J.).

Young has failed to address the conclusions which necessarily follow from the relevant City Charter provisions as well as the caselaw, i.e., that the Chief of Police is not a "final policymaker" with respect to the policies to be followed with reference to the

training and supervision of police officers. No evidence introduced by Young suggests that the result should be any different here than it was in Patrick, Inc., *supra*, where the challenged policy was more widespread in application and thus, if anything, much less likely to have been delegated.

### C. All of Young's Claims Against Sullivan Are Explicitly Premised on Theories of Liability That Have Been Judicially Foreclosed

Young's theory of liability against Sullivan in both Counts II and III are premised upon the facts, as alleged in her Complaint, that Sullivan was reckless in his role in the decision: (1) to hire Solitro, which also reflected an alleged failure to conduct properly a background investigation and otherwise screen the candidate, see Complaint, ¶¶ 57-70 at 12-15; and (2) not to discipline Saraiva following charges of misconduct on or about September 19, 1999. See id., ¶¶ 71-84 at 15-18.

However, the trial court granted defendants' motion for summary judgment as to the so-called "screening and hiring claims" contained in Counts II and III, see Trial Dec., 301 F.Supp.2d at 178, and on appeal, the court affirmed the trial court's "grants of summary judgment in favor of Providence on all other[12] section 1983 claims against it -- based on Saraiva and Cornel's training, Solitro's hiring, and Saraivas' discipline . . ." App. Dec., 404 F.3d at 32.

Therefore, Sullivan is entitled to summary judgment as to both Counts II and III.

## IV. CONCLUSION

For all the above reasons, the motion for summary judgment of defendants Prignano and Sullivan should be granted as to Count II and III of the Complaint.

---

[12]That is, "other" than the failure to train claim based on the training of Solitro. 404 F.3d at 32.

DEFENDANTS
RICHARD T. SULLIVAN and
URBANO PRIGNANO, JR.,

By their attorneys:
JOSEPH M. FERNANDEZ,
CITY SOLICITOR

Kevin F. McHugh, #3927
Anthony F. Cottone, #3922
Caroline Cole Cornwell, #3692
Michael Calise, #6715
City of Providence Department of Law
275 Westminster Street, Suite 200
Providence, RI 02903
(401) 421-7740, Ext. 333
(401) 351-7596 (Fax)

**CERTIFICATION**

I hereby certify that I mailed a true copy of the within to the Attorney(s) of Record as listed below on this 12th day of August, 2005.

Robert B. Mann, Esquire
Mann & Mitchell
501 Turks Head Building
Providence, Rhode Island 02903

Cochran, Neufeld & Scheck, LLP
99 Hudson Street, 8th Floor
New York, NY 10013

Michael Colucci, Esquire
Olenn & Penza
530 Greenwich Avenue
Warwick, Rhode Island 02888