SCANNED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LEISA YOUNG, in her Capacity as Administratrix of the Estate of Cornel Young, Jr. | : | |
| vs. | : | C.A. No. 01-288 S |
| CITY OF PROVIDENCE, by and through its Treasurer, STEPHEN NAPOLITANO, URBANO PRIGNANO, JR., individually and in his official capacity as Providence Chief of Police; RICHARD SULLIVAN, individually, JOHN RYAN, individually and KENNETH COHEN, individually | : | |

**DEFENDANTS URBANO PRIGNANO AND RICHARD SULLIVAN'S REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AS TO COUNTS II AND III**

Defendants URBANO PRIGNANO, JR. ("Prignano") and RICHARD SULLIVAN ("Sullivan") submit the following in reply to the memorandum submitted by plaintiff, LEISA YOUNG, in her capacity as Administratrix of the Estate of Cornel Young, Jr. ("Young" and "Cornel," respectively), in support of her objection to Prignano and Sullivan's motion for summary judgment as to Counts II and III of the First Amended Complaint (the "Complaint").

As will be discussed, in her memorandum Young:

(1) attempts to make an end-run around the test for qualified immunity – a three-part test set forth most recently in Brosseau v. Haugen, 125 S.Ct. 596, 599-600, 160 L.Ed2d 583 (2004) and Savard v. State of Rhode Island, 338 F.3d 23, 30 (1st Cir. 2003) – by wrongfully equating its three parts with the factors used to evaluate the *merits* of a training claim against a municipality under Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed2d 611 (1978). See Plaintiff's Mem. in Opp. at 2-3, 15;

(2) wrongfully claims that there had been an operative finding below that Prignano and Sullivan were guilty of "deliberate indifference," see id. at 3,15, 26, in the absence of any such finding; and

(3) erroneously assumes, without benefit of case law or factual support, that Prignano (or the current Chief of Police) was a "final policymaker" of the City and thus amenable to suit in his official capacity under Monell. See Plaintiff's Mem. in Opp. at 27-30.

## I. Young Attempts to Avoid Proper Application Of The Test Governing Qualified Immunity By Confusing It With A Faulty Discussion Of The Merits

Young emphasizes that "the standards of proof for a Monell failure to train and an individual supervisor's failure to train are virtually identical," see Plaintiff's Mem. in Opp. at 1, as if this proposition, even if true (which it is not) would be relevant to a proper analysis of qualified immunity here. Young thereby betrays not only a fundamental misunderstanding (or intentional obfuscation) between two distinct theories of § 1983 liability, she also, more significantly for present purposes, ignores the fact that the doctrine of qualified immunity *does not even apply* to Monell claims against municipalities, and in any event, is separate and distinct from any analysis of the merits. See Defendants' Mem. in Support at 6-7, *citing* Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998) and Morales v. Ramirez, 906 F.2d 784, 787 (1st Cir.1990); see also Savard, 338 F.3d at 30 ("holding on the merits is not dispositive on the issue of qualified immunity"). Id.

Young also harps on the fact that, as she puts it: "[t]he underlying constitutional right violated in this case is the right to be free from the use of deadly force when a person does not pose a reasonable threat. This right is one of the oldest and longest established of the 'clearly established' rights." Mem. in Opp. at 10. Again, as with Young's improper fixation on the

merits of the Monell claim, her emphasis on the clarity and/or longevity of the constitutional right to be free from excessive force is not relevant to the second and third part of the three-part algorithm set forth in Savard, which are the only parts that actually are at issue here.[1] Thus, for example, the second part of the relevant test is not concerned with *general* propositions of law – with "high levels of generality," to paraphrase the Court in Brosseau, see 125 S.Ct. at 599 - but with "fair warning" with reference to the specific *conduct* at issue. To again quote the Court in Brosseau: "It is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Id. (citation omitted).

Ironically, in attempting to distinguish Brosseau, Young illustrates this very point. Young claims that: "Defendants ignore that, in Brosseau, it was the reasonableness of the 'officer's *actions*' and 'the conduct in question' which the Supreme Court addressed and not the underlying constitutional right." See Plaintiff's Mem. in Opp. at 11 (emphasis added in Mem.). In fact, that is exactly the point. See Defendants' Mem. in Support at 11-12, *quoting* Brosseau, 125 S.Ct. at 599. As the Supreme Court noted in Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001): "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that *his conduct* was unlawful in the situation he confronted." Id. (emphasis added). It is the relevant *conduct* - here, an alleged failure to train properly on how to avoid on-duty/off duty misidentifications of fellow officers and/or on the dangers of friendly fire – *not* the longevity of the Fourth Amendment right to be free from excessive force, which is at issue.[2]

---

[1] Prignano and Sullivan have conceded that the first part of the algorithm, i.e., whether Cornel's constitutional rights had been violated, was effectively decided by the jury, below, see Defendants' Mem. in Support at 9, although one would not know it judging from the gist of Young's argument.

[2] Indeed, Young has done exactly what the Supreme Court warned against in Saucier - she has made the qualified immunity analysis "merely duplicative in an excessive force case, eliminating the need for the second step where a constitutional violation could be found based *on the allegations*." 121 S.Ct. at 2157 (emphasis added).

Finally, Young claims that the "clearly established" part of the qualified immunity test was conclusively decided by the district court, suggesting that a finding as to the second part of the Savard algorithm became the "binding law of the case." See Plaintiff's Mem. in Opp. at 8. In fact, no such finding was made by the district court, as was expressly recognized by the First Circuit, which noted that "the district court never dealt with qualified immunity issues...." See Young v. City of Providence, 404 F.3d 4, 32 (1st Cir. 2005) (Lynch, J.) ("App. Dec.").[3]

## II. Contrary to Young's Unsupported Claim, There Were No Findings Below that that Prignano and/or Sullivan Had Been "Deliberately Indifferent"

In place of reasoned analysis relative to the third part of the Savard algorithm, which deals with whether Prignano and Sullivan can be said as a matter of law to have been "plainly incompetent" or to have "knowingly violated the law," see Defendants' Mem. in Support at 16-17, *quoting* Hegarty v. Somerset County, 53 F.3d 1367, 1374 (1st Cir. 1995), Young again draws faulty conclusions from the First Circuit's comments regarding the Monell claim against the City. Thus, according to Young, the First Circuit's finding that: "a jury could find that [the] training deficiency constituted deliberate indifference to Cornel's constitutional rights," effectively disposed of Prignano and Sullivan's right to qualified immunity because, according to Young at least: "the stringent notice and state of mind requirements for a Monell claim necessarily satisfy the requirements for supervisory liability." See Plaintiff's Mem. in Opp. at 15. Of course, this rationale is "indistinguishable from *respondeat superior* liability," see City of St. Louis v. Praprotnik, 485 U.S. 112, 126,108 S.Ct. 915, (1988), a practice which has been

[3] Young's erroneous failure to appreciate the difference in the nature and type of the qualified immunity issues relative to Solitro and Saraiva, as compared to those posed with respect to Prignano and Sullivan, see Plaintiff's Mem. in Opp. at 8, n. 7, is reminiscent of her erroneous claim that "the standards of proof for a Monell failure to train and an individual supervisor's failure to train are virtually identical." See id. at 1.

expressly rejected in the context of § 1983 liability. See Defendants' Mem. in Support at 12, *citing* Gutérrez-Rodríguez v. Cartagena, 882 F.2d 553, 562 (1st Cir.1989).

In addition, Young has virtually ignored Manarite v. City of Springfield, 957 F.2d 953, 956 (1st Cir. 1992), a case which makes clear that even if one were to assume for argument's sake that there was a grave risk of harm associated with the training failures alleged by Young, she also must establish that Prignano had actual or constructive knowledge of this grave risk in the complete absence, not only of any prior *similar* incidents, but in the complete absence of *any* incidents, similar or not, involving friendly fire, and this Young has manifestly failed to do.[4]

## III. Young Has Failed to Meet Her Burden of Proving That Prignano is a "Final Policymaker" under Monell

Finally, Young has failed to effectively rebut Defendants' argument that Prignano is not a "final policymaker" under Monell. Faced with the First Circuit's characterization of his role as "unclear," see App. Dec., 404 F.3d at 30, n. 21, a City Charter which vests such final authority elsewhere, see Defendants' Mem. in Support at 20, Young is left with the unsupported claim that certain mysterious "legislation" "*implicitly* grants the Chief of Police policymaking power as the Chief Executive of the police department." See Plaintiff's Mem. in Opp. at 28 (emphasis added).

Indeed, Young is vague both with respect to the source of Prignano's alleged "final policymaking" powers as well as with respect to the specific area over which he supposedly had such authority.

---

[4] Young also: (1) misleadingly claims that "Commissioner Partington testified that Prignano should have been fired and could not possibly lead the PPD," see Plaintiff's Mem. in Opp. at 4, as if this opinion had anything to do with a failure to train. In fact, the opinion was based upon test-taking incidents having no relation to this litigation and will be the subject of a motion *in limine*; (2) improperly construes the holding of Camilo-Robles and other cases to in effect suggest that the law of *respondeat superior* can be applied in the context of a § 1983 claim, see id. at 7, n. 6; and (3) erroneously asserts that "a jury has already decided that Officer Young did not pose a threat to Officer Solitro or to anyone else," see id. at 12, in the complete absence of any such finding.

DEFENDANTS,
RICHARD T. SULLIVAN and
URBANO PRIGNANO, JR.,

By their attorneys:
JOSEPH M. FERNANDEZ,
CITY SOLICITOR

Kevin F. McHugh, #3927
Anthony F. Cottone, #3922
Providence Law Department
275 Westminster Street, Suite 200
Providence, RI 02903
(401) 421-7740, Ext. 333
(401) 351-7596 (Fax)

## CERTIFICATION

I hereby certify that I mailed a true copy of the within to the Attorney(s) of Record as listed below on this 9th day of September, 2005.

Robert B. Mann, Esquire
Mann & Mitchell
501 Turks Head Building
Providence, Rhode Island 02903

Cochran, Neufeld & Scheck, LLP
99 Hudson Street, 8th Floor
New York, NY 10013

Michael Colucci, Esquire
Olenn & Penza
530 Greenwich Avenue
Warwick, Rhode Island 02888