MJC:mes 95306 \pleading\95306mlimine2.wpd

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| LEISA YOUNG | : | |
| | : | |
| VS. | : | C.A. NO. 01-288S |
| | : | |
| CITY OF PROVIDENCE, ET AL | : | |

**DEFENDANTS RYAN AND COHEN'S MOTIONS IN LIMINE**

Now come the defendants, John Ryan and Kenneth Cohen, and move, in limine, to preclude the plaintiff from introducing and/or making reference to certain evidentiary matters as more particularly set out in the attached memorandum of law.

Your defendants further join in the motions in limine that have been filed by co-defendants City of Providence and Prignano.

The specific motions are identified as follows:

A. Promotional Examination Issue . . . . . . . . . . 1

B. Requirement of Saraiva to Issue "Instruction" to Solitro . . . . . . . . . . 5

C. Prefacing Verbal Commands with the Word "Police" . . . . . . . . . . 6

D. Lights and Siren . . . . . . . . . . 7

E. Witnesses Without Personal Knowledge of Relevant Training . . . . . . . . . . 7

F. Off-Duty Misidentifications . . . . . . . . . . 8

G. James Wiener - Forensic Pathologist . . . . . . . . . . 9

DEFENDANTS,
By their Attorney,

Michael J. Colucci, Esq. #3302
OLENN & PENZA, LLP
530 Greenwich Avenue
Warwick, RI 02886
PHONE: (401) 737-3700
FAX: (401) 737-5499

**CERTIFICATION**

I certify that I sent a true copy of the within on 10/7/05 to:

Nick Brustin, Esq.
Cochran, Neufeld & Scheck, LP
99 Hudson Street, 8th Floor
New York, NY 10013

Robert B. Mann, Esq.
610 Turks Head Place
Providence, RI 02903

Kevin F. McHugh, Esq.
CITY SOLICITOR'S OFFICE
275 Westminster Street, Suite 200
Providence, RI 02903-1845

MJC:mes 95306 \pleading\95306memomlimine2.wpd

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

LEISA YOUNG :
:
VS. : C.A. NO. 01-288S
:
CITY OF PROVIDENCE, ET AL :

**DEFENDANTS RYAN AND COHEN'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTIONS IN LIMINE**

**A. PROMOTIONAL EXAMINATION ISSUE**

During discovery the plaintiff inquired into evidence relating to a "promotional examination scandal" (whereby certain candidates may have been provided some sort of assistance) within the Providence Police Department and apparently intends to introduce evidence concerning defendant Ryan and/or Prignano's involvement therein. Such evidence should be excluded from the trial of this matter.

Given the allegations against defendants Ryan and Cohen, it is a far stretch to imagine how inquiry into the promotional examination matter is even remotely relevant to any of the issues to be tried in this case. At best, all it could lead to is evidence of the "bad character" of Ryan, Prignano or other members of the department (who are not even defendants in this action), all of which would be specifically excluded by Fed. R. Evid. 404(b).

Rule 404(b) specifically precludes the introduction of so-called bad acts, for the purpose of showing that the person at issue acted in conformity therewith or that the person had a propensity to commit the act which is the subject matter of the current litigation, *U.S. v. Aguilar-Aranceta,* 58 F.3d

796 (1st Cir. 1995). *Aguilar-Aranceta* sets out the First Circuit's two part test to determining admissibility of such evidence, *Id.* at 798. First, it must be determined whether the evidence in question is offered for any purpose other than solely to prove that the defendant had a propensity to commit the act in question, *Id.* It must be determined whether the evidence has some "special" probative value such as being probative of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, *Id.* If some "special relevance" can be shown, the second prong of the test is to apply a Rule 403 analysis to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, *Id.*

In the *Aguilar-Aranceta* case, evidence was admitted of the defendant's prior conviction for possession of cocaine in order to show that she had the requisite knowledge when she picked up packages at a post office which were addressed to her and found to contain cocaine. In *Aguilar-Aranceta*, the court noted that the justification often advanced, for admitting evidence of other crimes to prove knowledge, is that no inference as to the defendant's character is required, *Id.* at 799. The court further noted however, that there was a danger that the supposed inferences to knowledge would be obscured by the forbidden inference to propensity, *Id.* The court ultimately found that given the similarity of the underlying conduct in the prior conviction, that "special relevance" was shown. However, the evidence should have been excluded as its probative value was outweighed by the unfair prejudice arising from is introduction, *Id.* at 800.

In the case at bar, the plaintiff cannot meet the first prong of this Circuit's two prong test. This case centers around the propriety of the shooting of the plaintiff's decedent by a member of the Providence Police Department, Officer Michael Solitro, during an armed confrontation with suspects outside of a local, late night eatery. The issue remaining to be tried focuses on whether Solitro was

properly trained for such confrontations. Ryan is included in this action as a defendant because of certain supervisory responsibilities he allegedly had with respect to training.

None of the issues in the case remotely relate to improperly obtained promotions. That is simply not a subject matter of this suit. Nor, does the plaintiff suggest that anyone has ever been convicted of a criminal charge relating to the so-called promotional examination scandal. Therefore, impeachment of any witness in this action by way of criminal conviction is not an issue either. Therefore, the only plausible purpose for the introduction of such evidence would be to show that Ryan, Prignano, or some other witness in this case might be of "bad character" and that some how rises to the level of that "special relevance" to prove an issue in the case, such as deficient training.

Rule of Evidence 608(b) likewise should not be employed as a means of getting around otherwise prohibited "character" evidence. It goes without saying that this "promotional scandal" type evidence is a matter which is collateral to the case at bar. A matter is considered collateral if "the matter itself is not relevant in the litigation to establish a fact of consequence, i.e. not relevant for a purpose other than mere contradiction of the in-court testimony of the witness." *U.S. v. Marino*, 277 F.3d 11, 24 (1st Cir. 2002) citing *U.S. v. Beauchamp*, 96 F.2d 1, 3 (1st Cir. 1983). Rule 608(b) provides a very limited means of introducing specific instances of "bad" conduct and, even there, is subject to the discretion of the trial court. The rule, on its face, provides that "specific instances of the conduct of a witness, for the purpose of attacking or supporting a witness' character for truthfulness, other than conviction of crimes as provided in Rule 609, ***may not be proved by extrinsic evidence***..."

This rule is right in line with the "well established" principle that a party may not present extrinsic evidence to impeach a witness by contradiction on a collateral matter, *Beauchamp*, 986 F.2d

at 3. Thus, it is often stated that when a witness testifies to a collateral matter, the examining party "must take the answer," i.e. the examiner may not disprove it by extrinsic evidence, *Id.*

The rule goes on to state that such specific instances of conduct ***may***, ***in the discretion of the court***, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness.

This court should exercise its discretion and not permit any inquiry at all on this subject matter. It is clearly a collateral matter with very low, if any, probative value. Any such relevance would be outweighed by the unfair prejudice that would arise from the introduction of such evidence. Broken down to its simplest form, it is tantamount to saying that, assuming Ryan and/or Prignano either cheated or helped others cheat on a promotional examination, then the department's training in defensive tactics was more likely to be deficient. Such an argument is quite dubious, especially because persons other than Ryan or Pirgnano actually instructed in those areas of training. The only potential for such evidence, is that which Rule 404(b) specifically prohibits. Moreover, it would be substantially outweighed by unfair prejudice. As noted by *Aguilar-Aranceta*, the supposed permitted inference would be obscured by the forbidden inference to propensity.

It lacks merit for the plaintiff to say that Ryan's involvement in such matters shows his willingness to violate rules of the department and therefore, in turn, shows his willingness to provide deficient training. First, defendant Cohen is named as a defendant for the very same reason as defendant Ryan, i.e. his supervisory role with regard to training. Clearly, such an argument by the plaintiff could not attach itself to Cohen's culpability. Cohen was the director of Solitro's academy—not Ryan. Why, then, would it have any relation, in an evidentiary way, to Ryan's culpability for training.

Moreover, there has been no adjudication, by any governing body, that Ryan's involvement therein amounts to a violation of departmental rules or regulations. At his deposition, Ryan has testified to his limited involvement in providing access to study reference material to select individuals as a means of settling a labor/grievance dispute between those individuals and the department concerning previous promotional examinations. Allowing such evidence would require a "trial within a trial" to explain this rather complicated labor process, the previous exam, the members' grievance and the ultimate result.

This case should not devolve into a "Plumderdome II" case. The issues can, and ought to be, narrowly focused on the events of the evening in question. As to training, it was what it was and it does not rest on Ryan's credibility. The fact finder will find that it was either deficient or not, as the case may be, based on what the training was, not based upon Ryan's involvement in a "promotional examination schedule," so-called.

## B. REQUIREMENT OF SARAIVA TO ISSUE "INSTRUCTION" TO SOLITRO

During Phase I of this matter, the plaintiff was permitted to introduce evidence as to Saraiva's failure (as the senior officer) to provide instruction and/or guidance to Solitro (the junior officer) regarding what to do at the scene and who should take the lead, etc. That is all immaterial now, given the jury's finding in favor of Saraiva. The plaintiff cannot claim a right to recover based on any alleged deficient training of Saraiva as to how to perform as the "senior officer" in the circumstances of this case.

It goes without saying that before municipal and/or supervisory liability could be had, a plaintiff must first show an underlying constitutional violation on the part of the subordinate officer,

*City of Los Angeles v. Heller*, 475 U.S. 796 (1986). The First Circuit has long followed the *Heller* reasoning and continues to do so, even in a failure to train case, *Hegarty v. Somerset County*, 53 F.3d 1367 (1st Cir. 1995). In discussing the standard for supervisory liability, the *Hegarty* court noted, as the first pre-requisite, that the behavior of the subordinate must result in a constitutional violation, *Id.* at 1379-80.

Since Saraiva's conduct relating to his failure to provide instructions and/or guidance did not result in a constitutional violation, the plaintiff cannot, as a matter of law, satisfy this pre-condition to seeking municipal and/or supervisory liability. Moreover, the Circuit court, in the case at bar, was quite clear that any proper allegation of failure to train must be aimed as Solitro's lack of training and not at the deficiencies in Saraiva's or Young's training, 404 F3d. at 26.

Accordingly, the issue of Saraiva's instruction and/or guidance towards Solitro is not material in the case at bar and, for that reason, ought not be referenced in any way.

## C. PREFACING VERBAL COMMANDS WITH THE WORD "POLICE"

For the very same reasons cited above regarding Saraiva's instruction/guidance towards Solitro, the plaintiff should similarly be precluded from making any reference to and/or introducing any evidence of a failure of Solitro (and Saraiva for that matter) to preface verbal commands with the word "police" or some phrase of similar import. Like the issue regarding Saraiva's lack of instruction/ guidance, the trial judge during Phase I permitted the plaintiff to introduce evidence regarding both officers' failure to preface their commands with "police" and the undisputed testimony was that they did not. Plaintiff's expert, James Fyfe, was permitted to opine that the same amounted to a failure to meet generally accepted policing principles and, as such, this evidence was part of that

evidence that the jury was permitted to consider as it pertained to Saraiva's and Solitro's actions leading up to the shooting.

Since the jury found in favor of Saraiva, it necessarily rejected, that issue as leading to an unconstitutional shooting of Young. Therefore, the necessary pre-condition to finding supervisory and/or municiple liability based on the theory to train officers to preface their commands with the word "police" cannot be established as a matter of law.

**D. LIGHTS AND SIREN**

As one of her evidentiary rulings, Judge Lisi refused to permit evidence as to the failure to use lights and siren (while driving the police vehicle to the scene) to be considered by the jury in their deliberations (expert Fyfe was initially allowed to testify on the issue and during the jury charge, Judge Lisi specifically instructed the jurors that they were to disregard any such evidence).

It is not know whether the plaintiff intends to pursue such a line of questioning since the First Circuit upheld Judge Lisi on this particular ruling. Moreover, it is undisputed that Saraiva was the driver of the police car and for the reasons stated in motions B and C above, such evidence has no materiality to the issues remaining to be tried.

**E. WITNESSES WITHOUT PERSONAL KNOWLEDGE OF RELEVANT TRAINING**

It is axiomatic that a witness cannot testify to a matter unless that witness has personal knowledge of the same (exclusive, of course, of permitted expert testimony). Since the parties' pre-trial memoranda is not currently due, it is not yet know whether the plaintiff intends to present witnesses who were not part of the training programs administered to Solitro. In earlier filings, the

plaintiff's identified certain Providence police officers who fell into that category who, according to the plaintiff, would testify to a lack of training on off-duty issues. The defense merely wants to raise this issue now to prevent improper questioning and/or blurt outs of/from witnesses without personal knowledge of the relevant training of Solitro.

## F. OFF-DUTY MISIDENTIFICATIONS

In her pre-trial memorandum, the plaintiff has identified certain officers who will allegedly testify to off-duty misidentifications, apparently in an effort to show that the City and/or its supervisors were on notice that misidentification was a problem for Providence police officers. The plaintiff listed Officers Harris, Small, and Young, Sr., as intending to testify to such matters. However, unless and until the plaintiff can show that said individuals reported such misidentifications to city officials responsible for the police department, or that such misidentifications were in someway similar to the alleged "misidentification" in the case at bar, such evidence would be of no material value whatsoever on the issue of notice. For example, Young, Sr., had provided deposition testimony to the effect that he, while driving home after hours, was stopped by a patrolman for a purported traffic violation and the patrolman did not recognize him as a police officer until he approached his vehicle after the stop. Such evidence would bear no materiality to the issue of whether or not the City or its supervisors were on "notice" of likely misidentifications of off-duty officers during gun fights and/or violent confrontations. Discovery did not show any such misidentification evidence regarding Providence police officers. At the very least, your defendants would request that the plaintiff provide a short proffer with respect to any witnesses intended to speak on this issue, or in the alternative, that a voir dire be allowed outside of the presence of the jury, on any such witnesses.

## G. JAMES WIENER - FORENSIC PATHOLOGIST

The plaintiff listed this individual as an expert witness. In reading Wiener's report, however, he opines, at one point, that cornel Young, Jr., was in a "state of absolute terror" when he recognized that other police officers were shooting at him. Such testimony is pure "thirteenth juror" material. That conclusion is not a proper matter of expert opinion and requires no special training or knowledge on the part of the expert that would, in turn, aid the fact finder. The jury can reach that conclusion, or not reach that conclusion, on its own if the evidence suggested the same. Accordingly, Wiener should be precluded from making such a statement and/or offering such evidence.

Respectfully submitted,
DEFENDANTS,
By their Attorney,

Michael J. Colucci, Esq. #3302
OLENN & PENZA, LLP
530 Greenwich Avenue
Warwick, RI 02886
PHONE: (401) 737-3700
FAX: (401) 737-5499

**CERTIFICATION**

I certify that I sent a true copy of the within on 10/7/05 to:

Nick Brustin, Esq.
Cochran, Neufeld & Scheck, LP
99 Hudson Street, 8th Floor
New York, NY 10013

Robert B. Mann, Esq.
610 Turks Head Place
Providence, RI 02903

Kevin F. McHugh, Esq.
CITY SOLICITOR'S OFFICE
275 Westminster Street, Suite 200
Providence, RI 02903-1845

Maureen E. Sundin