UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LEISA YOUNG, Individually and in her Capacity as Administratrix of the Estate of Cornel Young, Jr. | : | |
| vs | : | C.A. No. 01-288 S |
| CITY OF PROVIDENCE, et al. | : | |

**MOTION IN LIMINE OF DEFENDANTS CITY OF PROVIDENCE AND URBANO PRIGNANO, JR. TO EXCLUDE EXHIBITS NUMBERED 30, 32, 34 THROUGH 55, 90 AND 91 IN THE PLAINTIFF'S LIST OF EXHIBITS SUBMITTED WITH HER PREVIOUS PRE-TRIAL MEMORANDUM**

The Defendants City of Providence and Urbano Prignano, Jr. hereby move in limine to exclude any and all evidence pertaining to the following: **The exclusion of exhibits numbered 30, 32, 34 through 55, 90, and 91 in the Plaintiff's list of exhibits submitted with her previous pre-trial memorandum**. In support hereof, Defendants hereby include and incorporate by reference as if fully set forth their memorandum submitted contemporaneously herewith:

Defendants
City of Providence and Urbano Prignano, Jr.

By their Attorney,

JOSEPH M. FERNANDEZ
CITY SOLICITOR

Kevin F. McHugh (#3927)
Senior Assistant City Solicitor
Providence Law Department
275 Westminster Street, Suite 200
Providence, Rhode Island
(401) 421-7740 Ext 333
(401) 351-7596 (Fax)

# CERTIFICATION

I hereby certify that I mailed a true copy of the within to the Attorney(s) of Record as listed below on this 6th day of October, 2005.

Robert B. Mann, Esquire
Mann & Mitchell
501 Turks Head Building
Providence, Rhode Island 02903

Nick Brustin, Esq.
Cochran, Neufeld & Scheck, LLP
99 Hudson Street, 8th Floor
New York, NY 10013

Michael Colucci, Esquire
Olenn & Penza
530 Greenwich Avenue
Warwick, Rhode Island 02888

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LEISA YOUNG, Individually and in her Capacity as Administratrix of the Estate of Cornel Young, Jr. | : | |
| vs | : | C.A. No. 01-288 S |
| CITY OF PROVIDENCE, et al. | : | |

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE OF DEFENDANTS CITY OF PROVIDENCE AND URBANO PRIGNANO, JR. FOR THE EXCLUSION OF EXHIBITS NUMBERED 30, 32, 34 THROUGH 55, 90 AND 91 IN THE PLAINTIFF'S LIST OF EXHIBITS SUBMITTED WITH HER PREVIOUS PRE-TRIAL MEMORANDUM**

The Defendants City of Providence and Urbano Prignano, Jr. have filed a number of motions in limine requesting the exclusion not only of the evidence described below but also of other evidence and of the evidence mentioned in the motions in limine and supporting memoranda filed by the other Defendants in this matter, namely those filed by John Ryan and Kenneth Cohen.[1]

**EXCLUSION OF EXHIBITS NUMBERED 30, 32, 34 THROUGH 55, 90, AND 91 IN THE PLAINTIFF'S LIST OF EXHIBITS SUBMITTED WITH HER PREVIOUS PRE-TRIAL MEMORANDUM.**

Exhibits numbered 30, 32, 34 through 55, 90 and 91 in the Plaintiff's list of exhibits (attached hereto as Exhibit "A") submitted with her previous pre-trial memorandum includes a vast barrage of items ostensibly "(o)ffered to show Defendant City of providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable." These items include such

[1] The motions in limine and supporting memoranda filed by the other Defendants in this matter; namely, John Ryan and Kenneth Cohen, are hereby included and incorporated by reference as if fully set forth.

materials as an NYPD Video on Preventing Friendly Fire;[2] an NYC Transit PD Video;[3] Various articles by Fyfe and others;[4] IACP and NCAA, and protocols for law enforcement agencies and other such materials;[5] NYPD,[6] NYC Transit Authority,[7] NYC Housing Authority, [8] Philadelphia PD,[9] and Chicago PD[10] training and other such materials. As will be demonstrated below, not only should these exhibits be excluded because they have not been authenticated, because they are hearsay, and because they are duplicative and cumulative and are therefore likely to prejudice the jury, but they should also be excluded because they are immaterial under the principles applicable to excessive force claims and under the precepts set forth the pre-eminent case on Section 1983 municipal and supervisory liability arising in neglect of risk claims, namely the Supreme Court case of City of Canton, Ohio v. Harris, 489 U.S. 378, 109 S.Ct. 1197 (U.S. 1989). Were proffered exhibits numbered 30, 32, 34 through 55, 90 and 91 introduced into evidence, they would unduly confuse and prejudice the jury into straying from Canton's essential precepts.

Furthermore, it is patently obvious that the Plaintiff wants to apply the protocol from one of the largest (if not *the* largest) metropolitan police departments in the entire United States - namely the NYPD - to a much smaller police department - namely the PPD - which can only be described as miniscule by comparison. This factor alone cries out for the exclusion of the proffered exhibits by the application of Rule 403 to prevent

---

[2] Exhibit number 91.
[3] Exhibit number 90.
[4] Exhibits number 34, 35, 37, 42, 45, 52, 53, 54 and 90.
[5] Exhibit number 32, 38, 40, 43 and 44.
[6] Exhibit number 39, 41, 47, 48, 51.
[7] Exhibit number 46, 49
[8] Exhibit number 30, 50
[9] Exhibit number 55
[10] Exhibit number 36

confusion between those training practices, etc. which may or may not apply to an extremely large police department like the NYPD *versus* those training practices, etc. which may or may not apply to much smaller police departments like the PPD. In fact, even a cursory review of the training materials which the Plaintiff has proffered reveals that she has purposefully chosen training materials associated with much larger police departments and institutions so as to have the greatest possible disparity with the training practices of smaller police departments like the PPD. Moreover, not only is there this obvious difference in size, but perhaps just as importantly, there is an obvious difference in the availability of resources, manpower, and the likelihood of the occurrence of unfortunate events, the latter of which is conclusively demonstrated by the fact that - unlike the NYPD - the PPD had no "friendly fire incidents" in its entire history[11] until the happening of the single incident which is the subject of the instant lawsuit.

That the proffered evidence dealing with training and other practices from one of the largest (if not *the* largest) metropolitan police departments in the entire United States is immaterial and will only serve to confuse and prejudice the jury is further demonstrated by the fact that the jury will - upon the introduction of such evidence - be inclined to stray from one of the most important precepts from the pre-eminent case on Section 1983 municipal and supervisory liability arising in neglect of risk cases, namely the Supreme Court case of City of Canton, Ohio v. Harris, 489 U.S. 378, 390-391, 109 S.Ct. 1197, 1206 (U.S. 1989) wherein the Court cautioned:

> That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program . . . . It may be, for example, that an

[11] Exhibit number 36

> otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

The Supreme Court in Canton set the bar very high for plaintiffs pursing neglect of risk claims against supervisory officials and municipalities: As stated in the preeminent treatise in the area of Section 1983 liability, "Canton requires a "high degree of fault" for inadequate training to justify the imposition of municipal liability. . . . It is thus not surprising that . . . relatively few 1983 claimants are able to prevail under the rigorous City of Canton standards."[12] In setting this rigorous standard, Canton chose deliberate indifference — rather than the lower standard of gross negligence - over concerns that courts not "second-guess" the wisdom of municipal training programs.[13] Nevertheless, the Plaintiff in this matter seeks to sidestep Canton's rigors and ignore Canton's basis by-understating the quantum and quality of proof she needs to prevail in her neglect of risk claim against the City. Rather than admit that she cannot establish the pattern of prior misconduct needed to prevail[14] on her neglect of risk claim, the Plaintiff instead

---

[12] Schwartz and Kirklin, Section 1983 Litigation, Claims and Defenses § 7.17 (3rd Edition, Aspen Publishers, 1997).

[13] Footnote 17 in Section A(1)(b) of the City's prior memorandum in support of its motion for summary judgment.

[14] As the necessity of a pattern of prior misconduct in neglect of risk cases like that brought by the Plaintiff in this matter, please see the memoranda submitted by the City of Providence in support of its motion for summary judgment, which memoranda are hereby included and incorporated herein by reference.

chastises to municipal liability under section 1983.'" Basing liability on inadequate training where there is no municipal awareness of the City for arguing that "a pattern of prior misconduct is required to show deliberate indifference."[15] Rather than admit that she cannot establish the existence of the municipal policy needed to prevail on her neglect of risk claim, the Plaintiff instead seeks to rely upon Fyfe's opinions as to alleged deficient training and discipline. In this respect, the Plaintiff hopes that the training and disciplinary shortcomings to be proffered by Fyfe in combination with the above-mentioned exhibits which she now proffers will serve to demonstrate the existence of a deliberately indifferent municipal policy and a deliberate indifference on the part of the supervisory officials she has sued in the absence of clear pattern of prior constitutional violations of the same type alleged in the complaint leading to the same type of injury alleged in the complaint.[16] That Plaintiff is proceeding in this manner is especially troublesome because her counsel is undoubtedly aware that the Court in Holland ex rel. Holland v. City of Houston, 41 F. Supp 2d 678, 705-709 (S.D. Tex 1999) squarely rebuffed a similar attempt to pursue a neglect of risk claim based upon Fyfe's opinion of deficient training practices:

> It is . . . difficult in one sense even to accept the submission that someone pursues a 'policy' of 'inadequate training,' unless evidence be adduced which proves that the inadequacies resulted from conscious choice - that is, proof that the policymakers deliberately chose a training program which would prove inadequate"
> Moreover, there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."

---

[15] Page 3 in Plaintiff's memorandum in support of her objection to the City's summary judgment motion.
[16] A "pattern of constitutional violations" leading to the same type of injury alleged in the complaint is also required to neglect of risk claims brought against supervisory officials. In this respect, please see Sullivan and Prignano's memorandum in support of their motion for summary judgment, which memoranda are hereby included and incorporated by reference.

> The plaintiff must demonstrate 'at least a pattern of similar incidents in which the citizens were injured . . .to establish the official policy requisite to municipal liability under section 1983." Basing liability on inadequate training where there is no municipal awareness or acquiescence in a pattern of constitutional violations would potentially transform almost any encounter resulting in an injury into a valid § 1983 claim."
> To support their claims, the plaintiffs rely on the opinions of Fyfe.... Yet, . . . "[W]hen seeking to prove a municipality's malevolent motive, plaintiffs must introduce more evidence than merely the opinion of an expert witness."
> In this situation, there is insufficient evidence that the City displayed deliberate indifference . . . when it adopted the training methods . . .criticized by Fyfe. There is no evidence of a pattern or practice of constitutional violations committed by inadequately trained HPD officers working off-duty jobs at establishments selling alcoholic beverages . . . "[T]he City's failure to provide further training in this circumstance would rise to the level of deliberate indifference only if it was aware of a series of constitutional violations occurring while its police officers were performing off-duty security work." Indeed, there is no evidence other than the single incident alleged here of a City police officer committing a constitutional violation while performing off-duty security work," which is insufficient as a matter of law to impose liability. Therefore, the plaintiffs have failed to demonstrate a constitutionally infirm municipal policy or custom.

Consequently, a plaintiff pursing a neglect of risk claim cannot rely upon expert opinion or negligent training practices to demonstrate the constitutionally significant inadequacies in training, screening, or supervision programs needed to demonstrate the existence of a deliberately indifferent municipal policy, but rather must demonstrate a prior pattern of similar incidents before any such evidence will even become relevant because it is only by first showing such a pattern that the plaintiff may establish the

existence of a deliberately indifferent municipal policy. "Basing liability on inadequate training where there is no municipal awareness of or acquiescence in a pattern of constitutional violations would potentially transform almost any encounter resulting in an injury into a valid §1983 claim. [17] Consequently, the above mentioned exhibits proffered by the Plaintiff in this matter – all of which deal with training practices – are immaterial because in the present case there is absolutely no-evidence of a municipal policy arising in the context of an "awareness of or acquiescence in a pattern of constitutional violations "leading to the same type of injury alleged in the complaint. Simply put, municipal liability is based upon the existence of a municipal policy, not upon principles of negligence training, hiring, screening, or supervision because virtually limitless §1983 liability would otherwise ensue.[18] The Court in the present matter should preclude the use of the above mentioned exhibits so as to ensure that the jury is not so unduly prejudiced and confused as to stray from one of Canton's most important precepts, namely:

> It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

---

[17] Holland v. City of Houston, 41 F. Supp. 2d 678, 706 (S.D. Tex., 1999)
[18] A "pattern of constitutional violations" leading to the same type of injury alleged in the complaint is also required to neglect of risk claims brought against supervisory officials. In this respect, please see Sullivan and Prignano's memoranda in support of their motion for summary judgment, which memoranda are hereby included and incorporated by reference.

In fact, the First Circuit has held that mere negligence is not sufficient even where there is a pattern of prior violations.[19]

Besides the fact that the alleged evidence of police training practices which the Plaintiff's seeks to introduce via proffered exhibits numbered 30, 32, 34 through 55, 90, and 91 should be excluded as immaterial, Courts have applied Rule 403 to preclude the use of such evidence in neglect of risk cases: For example, in Soller v. Moore, 84 F. 3d 964 (7th Cir., 1996) a mother who was the administrator of her son's estate brought a §1983 excessive force claim against an off-duty police officer by the name of Moore who had relentlessly pursued and then stopped her drunk son and his friend who were driving erratically in a "Beretta." Moore chased and then stopped the plaintiff's drunk son and his friend because their erratic driving had caused Moore to drive over a medium barrier and to thereby damage his wife's car. During the trial, the Plaintiff called the assistant chief of police by the name of Graham who had testified during his deposition that certain standards adopted by the International Association for the Chiefs of Police (IACP) "made sense." Those IACP standards which the plaintiff (Soller) sought to introduce contained a "prohibition against off-duty officers engaging in traffic stops under circumstances where they are personally involved in the infraction." In sustaining the trial court's exclusion of that evidence, the Circuit Court observed:

> Even assuming relevancy, it must be emphasized that Rule 403 of the Federal Rules of Evidence authorizes the district

[19] For example, in the case of Manarite By and Through Manarite v. City of Springfield, 957 F.2d 953 (1st Cir. 1992) - where the plaintiff's decedent hanged himself with shoelaces while being detained in a prison cell - the First Circuit Court of Appeals refused to impose individual liability against the police chief even though there had been four (4) prior and recent incidents of prisoners hanging themselves with shoelaces. As the Court in Manarite observed, "(G)iven the number of recent shoelace suicide attempts (four), the chief's failure to take immediate corrective steps (to insure the removal of shoelaces form prisoners) might well be negligent. But we fail to see how, without more evidence, one could call it 'deliberate indifference.'"

courts to exclude relevant evidence- if its probative value is substantially outweighed by other considerations, including unfair prejudice, confusion of issues, and considerations based on delay. Soller . . . contends that the court abused its discretion when it stopped her from offering documentary evidence from the IACP. We do not agree. She sought to introduce IACP standards and policies concerning the prohibition against off-duty officers engaging in traffic stops under circumstances where they are personally involved in the infraction. Through this evidence she sought to prove that, under the circumstances confronting Moore, he was not professionally obligated to pursue the Beretta and make the stop. Moore and the City countered that these "model" policies were not relevant to whether Moore acted within proper Milwaukee Police Department procedures and constitutional requirements with reference to his decisions and actions. The district court agreed with Moore and the City and kept the evidence out. The policies were simply not relevant to the issue of the reasonableness of Moore's actions in seizing Satermo. And furthermore, whether it is wise public policy to allow off-duty police officers to chase late night traffic violators is beside the point: the action is not unconstitutional. Similarly, the district court did not abuse its discretion when it precluded the testimony of Graham. Soller sought to introduce testimony from Graham regarding his response to the IACP model policies, which he read during the course of his deposition. At his deposition, Graham testified that the model policies appeared to him to represent common sense, although they were not Milwaukee Police Department policy. Soller argued that the proffered testimony would establish not only that the IACP model policies made sense, but that they were not inconsistent with city of Milwaukee police policy. In ruling on defendants' motion in limine to exclude this testimony, the district court read both the IACP model policies and Graham's deposition testimony regarding those policies. The judge concluded that the issue was what policies Moore was bound to and guided by. Since Graham did not state that the IACP model

> policies are Milwaukee's policy, even though he agreed that they made sense, the evidence was properly excluded.[20]

Consequently, the IACP standards (and Graham's testimony that the IACP standards made sense) were properly excluded under Rule 403 for two reasons:

First, the issue in excessive force cases - like that brought by the Plaintiff in this matter against Saraiva and Solitro - is to "what policies . . . (the police officer alleged to have used excessive force) was bound to and guided by in his *own* police department because the standard in such cases applies an objective reasonableness standard looking to "whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him.[21] Obviously, those "facts and circumstances confronting" the officer are the policies of that officer's own police department, not the standards used by other police departments, the IACP or the NCAA. Consequently, the deluge of such materials which the Plaintiff would have this Court introduce into evidence - via exhibits numbered 30, 32, 34 through 55, 90 and 91 in the list of exhibits submitted with her pre-trial memorandum - cannot be "(o)ffered to show "that Saraiva and Solitro's conduct was unreasonable" because such materials are immaterial to the Plaintiff's excessive force claim against Saraiva and Solitro. When the low probative value of such evidence is balanced against its above described high likelihood to prejudice, confuse, and overwhelm the jury, it becomes clear that the evidence should be precluded.

---

[20] Soller v. Moore, 84 F.3d 964, 968-969 (7th Cir. 1996)

[21] As stated by the Court in Soller v. Moore, 84 F.3d 964, 968 (7th Cir. 1996):

The basic claim in this case is that Moore used excessive force against Satermo. Claims of excessive force in the case of a "seizure" are analyzed under the "objectively reasonable" standard of the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct 1865, 1872, 104 L.Ed 2d 443 (1989); McDonald v. Haskins, 966 F.2d 292, 293 (7th Cir. 1992) The trier of fact must look to whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard

Second, because the Milwaukee Police Department's policy of allowing personally involved off-duty officers to-effectuate traffic stops was not itself unconstitutional and therefore had little relevance in comparison to its potential to prejudice the jury. In similar vein, the alleged evidence of police training practices which the Plaintiff seeks to introduce via the deluge of proffered exhibits described above should be excluded because they have very little relevance in comparison to their great potential for prejudice because irrespective of whether or not training practices were or should have been PPD policy, the PPD policies were not in and of themselves unconstitutional. That is, the probative value of the training practices which the Plaintiff seeks to introduce --- especially where it has not first demonstrated that the PPD's training practices are constitutionally insufficient -- is greatly outweighed by the potential to prejudice the jury. Again, as cogently stated by the Court in the pre-eminent Section 1983 "failure to train" case; namely, City of Canton, Ohio v. Harris, 489 U.S. 378, 390-91, 109 S.Ct. 1197, 1206 (U.S. 1989)"

> Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations which they must deal.

Finally, none of the above-mentioned exhibits proffered by the Plaintiff have been authenticated, and all of these exhibits are hearsay. In addition, even a cursory review of the materials proffered by the Plaintiff - via the above-mentioned exhibits number 30, 32, 34 through 55, 90 and 91 – reveals that many of the materials cover the

---

to his underlying intent or motivation.

same topics.

Therefore, even if the Court is inclined to permit the introduction of such evidence over the Defendants' objections, then the Court should at the very least severely restrict the amount of such evidence that is introduced (and where applicable compel the Plaintiff to shorten, redact, or summarize the exhibits) so that the jury is not unduly confused and prejudiced into straying from Canton's essential precepts by the sheer volume, duplication, and cumulative nature of that evidence.

WHEREFORE, defendants City of Providence and Urbano Prignano, Jr. pray that their Motion in Limine to exclude exhibits numbered 30, 32, 34 through 55, 90 and 91 in the Plaintiff's list of exhibits submitted with her pre-trial memorandum be granted.

Respectfully submitted,

Defendants
City of Providence and Urbano Prignano, Jr.

By their Attorney,

JOSEPH M. FERNANDEZ
CITY SOLICITOR

Kevin F. McHugh (#3927)
Senior Assistant City Solicitor
Providence Law Department
275 Westminster Street, Suite 200
Providence, Rhode Island
(401) 421-7740 Ext 333
(401) 351-7596 (Fax)

**CERTIFICATION**

I hereby certify that I mailed a true copy of the within to the Attorney(s) of Record as listed below on this 7th day of October, 2005.

Robert B. Mann, Esquire
Mann & Mitchell
501 Turks Head Building
Providence, Rhode Island 02903

Nick Brustin, Esq.
Cochran, Neufeld & Scheck, LLP
99 Hudson Street, 8th Floor
New York, NY 10013

Michael Colucci, Esquire
Olenn & Penza
530 Greenwich Avenue
Warwick, Rhode Island 02888

# YOUNG v. CITY OF PROVIDENCE, ET AL.

## POTENTIAL TRIAL EXHIBITS

| Exhibit | Description of Document | Bates # (if applicable) | Purpose for which exhibit is offered |
|---|---|---|---|
| 1 | New Providence Police Department (PPD) Off-Duty Policy & PPD Training Academy In-Service Training: Deadly Force | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 2 | Notice of Deposition for Retired Captain John J. Ryan | | Offered to show Defendant City of Providence's deliberate indifference in training. |
| 3 | PPD Rules & Regulations, Part II: Section 202 - General Conduct and Responsibilities While Off-Duty | L00590-L00592 | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 4 | PPD Captain's Test Study Material General Order #16: Series of 1986 re. Arrest procedures (on and off duty) | L00313-L00316 | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 5 | PPD Section 202: General Conduct and Responsibilities while Off-Duty | 001722 | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 6 | PPD General Order #22, Series of 2001 re. Off-duty firearm policies (to amend rules 202.1 and 202.2) | L01319-L01321 | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 7 | Outline of PPD Class-Police Liability. Instructor: Captain John Ryan (lecture outline) | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training. |
| 8 | Regulations of the PPD | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 9 | Map of scene of shooting from the Providence Journal | | Offered to show that Saraiva and Solitro's conduct was unreasonable. |
| 10 | Witness statements for the Grand Jury relating to Solitro's altercation with Gregorio Small at Club Corniche and his prior employment at the Rhode Island Training School | L00042-L00126, L00252-L00261 | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference on hiring. |
| 11 | Documents relating to the investigation of Defendant Saraiva's prior shooting incident | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in discipline. |
| 12 | Carlos Saraiva's hospital records from 9/18/99. | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in discipline. |
| 13 | Michael Solitro's 1998 PPD Background Investigation Report | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in hiring. |

| | | | |
|---|---|---|---|
| 14 | Michael Solitro's 1996 Application for Appointment to Training Academy | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in hiring. |
| 15 | PPD Post Sheet for 1/27/00 | L00272 | Offered to show that Saraiva and Solitro's conduct was unreasonable. |
| 16 | Carlos Saraiva's Officer ID Card | | |
| 17 | Photos of Westminster and Winter, 9/18/99, 2:00 AM. | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in discipline. |
| 18 | Diagram of Scene at Fidas Restaurant from Attorney General's Office | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 19 | 1/28/00 witness statement of Michael Solitro | L00239-L00240 | Offered to show that Saraiva and Solitro's conduct was unreasonable. |
| 20 | 5/13/02 trial testimony of Urbano Prignano from U.S. v. Cianci, et al. | | Offered to show Prignano's, Ryan's and City of Providence's deliberate indifference in supervision of training, discipline and hiring. |
| 21 | 1/6/00 Letter to Colonel Urbano Prignano from AAG William Ferland re. Saraiva prior shooting. | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in discipline. |
| 22 | Rhode Island Training School Academy records of Michael Solitro | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in hiring. |
| 23 | Subpoena for testimony of Dennis Simoneau | | |
| 24 | Expert Report of James J. Fyfe, Ph. D. | | |
| 25 | Press Release from Attorney General John Partington re. Young shooting | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and discipline. |
| 26 | Press Release from Mayor Cianci re. Young shooting | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and discipline and that Saraiva and Solitro's conduct was unreasonable. |
| 27 | Curriculum for the 59th Training Academy | 001733-002139 | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and discipline and that Saraiva and Solitro's conduct was unreasonable. |
| 28 | Training Academy Materials from the 57th, 58th and 59th Training Academies | 000330-001309 | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and discipline and that Saraiva and Solitro's conduct was unreasonable. |
| 29 | NYPD Borough Based Training Program Instructor's Guide: On-Duty/Off-Duty Confrontation Situations | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |

| | | | |
|---|---|---|---|
| 30 | NY Housing Police Patrol Guide: Confrontation Situations | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 31 | CALEA Standards for Law Enforcement Agencies and Standards for Public Safety Training Academies | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and hiring and that Saraiva and Solitro's conduct was unreasonable. |
| 32 | IACP Training Key #403: Off Duty: Restrictions and Responsibilities | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 33 | James J. Fyfe, Ph. D. Vita | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training, hiring and discipline and that Saraiva and Solitro's conduct was unreasonable. |
| 34 | Fyfe, "Race and Armed Confrontation between Police Officers," 1977 | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 35 | Fyfe, "Always Prepared," November 1980 | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 36 | Chicago Police Department Deadly Force Policy amendment, December 1980 | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 37 | Law Enforcement News, "NYPD May Disarm Off-Duty," April1981 | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 38 | NAACP, "Models on Use of Deadly Force," section on off-duty guns,1983 | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 39 | NYPD, Uniforms and Equipment Patrol Guide Chapter,1984 | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 40 | International Association of Chiefs of Police ("IACP"), "Model Use of Deadly Force Policy," with commentary,1985 | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 41 | NYPD Legal Bulletin, Civil Liability of Police Officers, March 1987 | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |

| | | | |
|---|---|---|---|
| 42 | Rutledge, The Officer Survival Manual, pp. 203-236 | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 43 | IACP Model Policy, Off-Duty Conduct: Powers of Arrest, with commentary, 1988 | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 44 | IACP Training Key # 403, Off-Duty Arrests: Restrictions and Responsibilities, 1990 | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 45 | Geller and Scott, Deadly Force: What We Know, pp. 161-167, 266-267, 1992 | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 46 | NYC Transit Authority Police Department, Plainclothes Training Curriculum, November 1992 | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 47 | NYPD Patrol Guide Procedure 117-42, Confrontation Situations, August 1993. | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 48 | NYPD Training Syllabus, Confrontation Situations, 1993. | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 49 | NYC Transit Authority Department Manual Chapter 5, Section 12, District Plainclothes Police Officer, January 1994 | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 50 | NYC Housing Authority Interim Order 32, Methods of Identification and Operation for Members of the Service Assigned to Anti-Crime Patrol or Similar Duty, April1994 | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 51 | NYPD Report of Police-on-Police Shootings Focus Group, February 1995 | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 52 | Davis and Pinnizzotto, "Above and Beyond the Call of Duty," April 1996. | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 53 | Fyfe, et al., Police Administration, fifth edition, 1997, pp. 306-308; 507-510. | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 54 | Fyfe, "Good Judgment," 1998. | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |

| | | | |
|---|---|---|---|
| 55 | Philadelphia Police Department Memorandum 98-1, Off-Duty Police Actions, February 1998. | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 56 | Defendant, City of Providence's Response to Plaintiff's First Request for the Production of Documents | | Offered to show Defendant City of Providence's deliberate indifference in hiring, training and discipline. |
| 57 | Defendant, City of Providence's Answers to Plaintiff's First Set of Interrogatories | | Offered to show Defendant City of Providence's deliberate indifference in hiring, training and discipline. |
| 58 | Defendant, City of Providence's, First Supplemental Response to Plaintiff's First Request for Production of Documents | | Offered to show Defendant City of Providence's deliberate indifference in hiring, training and discipline. |
| 59 | Defendant, City of Providence's, Second Supplemental Response to Plaintiff's First Request for Production of Documents | | Offered to show Defendant City of Providence's deliberate indifference in hiring, training and discipline. |
| 60 | Defendant, City of Providence's, Response to Plaintiff's First Request for Admissions | | Offered to show Defendant City of Providence's deliberate indifference in hiring, training and discipline. |
| 61 | Defendant, City of Providence's, Answers to Plaintiff's Third Set of Interrogatories | | Offered to show Defendant City of Providence's deliberate indifference in hiring and training. |
| 62 | Defendant, City of Providence's, Third Supplemental Response to Plaintiff's First Request for Production of Documents | | Offered to show Defendant City of Providence's deliberate indifference in discipline. |
| 63 | Defendant, City of Providence's, Urbano Prignano, Jr., Richard T. Sullivan's Objection to Plaintiff's Second Set of Interrogatories | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in hiring. |
| 64 | Defendant, City of Providence's, Response to Plaintiff's First Request for Production of Documents | | Offered to show Defendant City of Providence's deliberate indifference in hiring, training and discipline. |
| 65 | Defendant City of Providence's Third Supplemental Response to Plaintiff's First Request for Production of Documents | | Offered to show Defendant City of Providence's deliberate indifference in hiring, training and discipline. |
| 66 | Defendant City of Providence's Fourth Supplemental Response to Plaintiff's First Request for Production of Documents | | Offered to show Defendant City of Providence's deliberate indifference in hiring, training and discipline. |
| 67 | Defendant City of Providence's Fifth Supplemental Response to Plaintiff's First Request for Production of Documents | | Offered to show Defendant City of Providence's deliberate indifference in hiring, training and discipline. |
| 68 | Defendant City of Providence's Sixth Supplemental Response to Plaintiff's First Request for Production of Documents | | Offered to show Defendant City of Providence's deliberate indifference in hiring, training and discipline. |
| 69 | Defendant, City of Providence's, Objection to Plaintiff's Request for Production of Documents | | Offered to show Defendant City of Providence's deliberate indifference in hiring, training and discipline. |
| 70 | Defendant, City of Providence's, Objection to Plaintiff's Second Request for Production of Documents | | Offered to show Defendant City of Providence's deliberate indifference in hiring, training and discipline. |
| 71 | Defendant Ryan's Response to Request for Production | | Offered to show Defendant Ryan's deliberate indifference in training. |
| 72 | Defendant, Urbano Prignano Jr.'s Response to Plaintiff's Second Request for Productions of Documents | | Offered to show Defendant Prignano's deliberate indifference in hiring, training and discipline. |
| 73 | Defendant, Richard Sullivan's Response to Plaintiff's Second Request for Productions of Documents | | Offered to show Defendant Sullivan's deliberate indifference in hiring. |
| 74 | Defendant Carlos Saraiva's Response to Plaintiff's Request for Production Dated March 4, 2002 | | Offered to show that Saraiva and Solitro's conduct was unreasonable. |
| 75 | Defendant Carlos Saraiva's Supplemental Response to Plaintiff's Request for Production Dated March 4, 2002 | | Offered to show that Saraiva and Solitro's conduct was unreasonable. |

| | | | |
|---|---|---|---|
| 76 | Defendant Saraiva's Response to Plaintiff's Request for Production Dated October 21, 2002. | | Offered to show that Saraiva and Solitro's conduct was unreasonable. |
| 77 | Defendant Saraiva's Supplemental Response to Plaintiff's Request for Production Dated October 21, 2002. | | Offered to show that Saraiva and Solitro's conduct was unreasonable. |
| 78 | Defendant Michael Solitro's Response to Plaintiff's First Request for Production | | Offered to show that Saraiva and Solitro's conduct was unreasonable. |
| 79 | Defendant Solitro's Response to Plaintiff's Second Request for Production | | Offered to show that Saraiva and Solitro's conduct was unreasonable. |
| 80 | Plaintiff's First Set of Depositions upon Written Questions to Vincent Cianci | | Offered to show Defendant City of Providence's deliberate indifference in hiring, training and discipline. |
| 81 | Deponent Vincent A. Cianci's Objections to Plaintiff's First Set of Depositions upon Written Questions | | Offered to show Defendant City of Providence's deliberate indifference in hiring, training and discipline. |
| 82 | Cornel Young, Jr., autopsy report dated 1/28/00 | 000032-000041 | Offered to show that Saraiva and Solitro's conduct was unreasonable and to show pain and suffering of Cornel Young, Jr. |
| 83 | Cornel Young, Jr.'s Rhode Island Hospital medical records dated 1/28/00 | 001591-001612 | Offered to show that Saraiva and Solitro's conduct was unreasonable and to show pain and suffering |
| 84 | Providence EMT records, Incident #3219, dated 1/28/00 | | Offered to show that Saraiva and Solitro's conduct was unreasonable and to show pain and suffering of Cornel Young, Jr. |
| 85 | Collective Bargaining Agreements between the City of Providence and the Fraternal Order of Police, Providence Lodge No. 3, for years 1996 and 2001 | 001322-001448 | Offered to show lost wages of Cornel Young, Jr. |
| 86 | Cornel Young Jr.'s PPD Personnel File | 001613-001657 | Offered to show lost wages of Cornel Young, Jr. |
| 87 | Cornel Young Jr.'s U.S. income tax returns for the years 1997, 1999, and 2000 | | Offered to show lost wages of Cornel Young, Jr. |
| 88 | Resume of Ms. Leisa Young | | Offered to show lost wages of Cornel Young, Jr. |
| 89 | Letter from Sandra Salera, dated 12/10/02, indicating Leisa Young's date of birth and annual income. | | Offered to show lost wages of Cornel Young, Jr. |
| 90 | Video: NYC Transit PD: For Our Own Sake | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 91 | Video: NYPD Preventing Friendly Fire | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 92 | Providence Public Safety Incident Dispatch Detail Report - Code Description - Public Group of females fighting inside and outside. Call received 1/28/00 1:41 - Call dispatched 1/28/00 1:43 - Sairaiva On-Scene Time: 1/28/00 2:53 | L0003-L0004 | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 93 | Transcript of Channel 1 Radio Dispatch Communications 1/28/00 | L00216-L00235 | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |

| | | | |
|---|---|---|---|
| 94 | Aerial drawing of Fida's Restaurant lot - Barstow Street/ Valley Street - note: Police Vehicle and suspect vehicle are drawn in. (with additional drawings of people placements) by Moffett 2/9/00 | L00245 | Offered to show that Saraiva and Solitro's conduct was unreasonable. |
| 95 | Aerial Drawing of Fida's Restaurant - Atwells Ave, Barstow St., Valley St. - Mobil Gas Station - Car Wash | L00251 | Offered to show that Saraiva and Solitro's conduct was unreasonable. |
| 96 | Aerial drawing of Fida's Restaurant lot - Barstow Street/ Valley Street - note: Police Vehicle and suspect vehicle are drawn in. | L00266 | Offered to show that Saraiva and Solitro's conduct was unreasonable. |
| 97 | An open letter of appreciation to the people of Providence and Rhode Island | L00274 | Offered to show that Saraiva and Solitro's conduct was unreasonable and to show lost wages of Cornel Young, Jr. |
| 98 | Remarks of Mayor Vincent A. Cianci, Jr., Grand Jury Decision, April 18, 2000 | L00284-L00285 | Offered to show that Saraiva and Solitro's conduct was unreasonable and to show lost wages of Cornel Young, Jr. |
| 99 | Press Releases by Mayor Vincent A. Cianci, Jr. | L00291-L00295 | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and discipline and that Saraiva and Solitro's conduct was unreasonable. |
| 100 | 2/16/00 Press Release re. Commission on Police-Community Relations in Providence | L00299-L00300 | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and discipline. |
| 101 | PPD Organizational Chart | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training, hiring and discipline. |
| 102 | PPD Captain's Test Study Material General Order #34, Series of 1996, re. Deadly Force | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and that Saraiva and Solitro's conduct was unreasonable. |
| 103 | Regulations of the PPD: 305.1-306.29 re. Officer violations and discipline | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and discipline. |
| 104 | PPD Firearms Discharge Manual: Guide to the Prevention of a Shooting Report | 001560-001582 | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in discipline. |
| 105 | 2/11/00 PPD Press Release re. Young investigation | 001583 | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and discipline. |
| 106 | Text of statement by Mayor Vincent A. Cianci re. Young shooting | 001584-001590 | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and discipline. |
| 107 | PPD Personnel Bureau Personnel Information for Cornel Young (including information sheet, employment history, application to training academy, certificates, interview information, criminal history inquiry, school records | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and to show lost wages of Cornel Young, Jr. |
| 108 | Cornel Young, Jr.'s terms of employment--Probationary Police Officer | 001665 | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and hiring and to show lost wages of Cornel Young, Jr. |

| | | | |
|---|---|---|---|
| 109 | Ltr to USDOJ from Department of Public Safety re. Statement of Circumstances - Death of Sergeant Cornel Young, Jr. | 001673 | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training, to show lost wages of Cornel Young, Jr. and to show that Saraiva and Solitro's conduct was unreasonable. |
| 110 | Copy of Cornel Young, Jr., Death Certificate | 001678 | Offered to show Cornel Young, Jr.'s pain and suffering and that Saraiva and Solitro's conduct was unreasonable. |
| 111 | PPD Human Resource Bureau, Cornel Young's resignation (1/28/00), PPD personal status change (7/25/97) from move | 001697-001700 | Offered to show lost wages of Cornel Young, Jr. |
| 112 | Blue Ribbon Commission 2000-2002 Final Report | 002586-002619 | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training, discipline and hiring. |
| 113 | Memo from Sgt. Donna Searles to Col. Prignano re. 58th and 59th PPD Recruit Classes | 002860 | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in hiring. |
| 114 | Documents re. 58th PPD Recruit Class (re. Solitro) | 002862-002869 | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in hiring. |
| 115 | Providence Home Rule Charter: Article X, City Departments, 1001. Department of Public safety. | | Offered to show Defendant City of Providence's deliberate indifference in training, hiring and discipline. |
| 116 | PPD Human Resource Bureau, Procedures for Police Applicant Background Investigations for the 57th Recruit School Evaluation Process | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in hiring. |
| 117 | Georgetown University Law Center, Continuing Legal Education: Police Misconduct Litigation/the Law Enforcement Perspective, Jack Ryan, J.D. | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training. |
| 118 | Documents relating to negligent background investigations by the PPD[1] | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in hiring. |
| 119 | Documents relating to other incidents of misconduct in and by the PPD[1] | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in training and discipline. |
| 120 | Michael Solitro's Psychiatric Records (Pending the Court's ruling on plaintiff's motions to compel) | | Offered to show Defendant City of Providence and supervisory defendants' deliberate indifference in hiring. |
| 121 | Photographs of the scene at Fidas restaurant on the night of the shooting. | | Offered to show that Saraiva and Solitro's conduct was unreasonable. |
| 122 | Curriculum Vita of James Weiner | | Offered to show credentials of medical expert |
| 123 | Curriculum Vita of Allan Feldman | | Offered to show credentials of economic expert |
| 124 | Notice of Claim | | Offered to show presentment of claim to City of Providence in accordance with the statutory requirement |
| | | | |
| | | | |