UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LEISA YOUNG, Individually and in her Capacity as Administratrix of the Estate of Cornel Young, Jr. | : | |
| vs | : | C.A. No. 01-288 S |
| CITY OF PROVIDENCE, et al. | : | |

**MOTION IN LIMINE OF DEFENDANTS CITY OF PROVIDENCE AND URBANO PRIGNANO, JR. TO EXCLUDE ALL EVIDENCE OF AND REFERENCE TO PARTINGTON'S OPINION TESTIMONY CONTAINED IN HIS DEPOSITION**

The Defendants City of Providence and Urbano Prignano, Jr. hereby move in limine to exclude any and all evidence pertaining to the following: **The exclusion of all evidence of and reference to Partington's opinion testimony contained in his deposition.** In support hereof, Defendants hereby include and incorporate by reference as if fully set forth their memorandum submitted contemporaneously herewith:

Defendants
City of Providence and Urbano Prignano, Jr.

By their Attorney,

JOSEPH M. FERNANDEZ
CITY SOLICITOR

Kevin F. McHugh (#3927)
Senior Assistant City Solicitor
Providence Law Department
275 Westminster Street, Suite 200
Providence, Rhode Island
(401) 421-7740 Ext 333
(401) 351-7596 (Fax)

**CERTIFICATION**

I hereby certify that I mailed a true copy of the within to the Attorney(s) of Record as listed below on this 7th day of October, 2005.

Robert B. Mann, Esquire
Mann & Mitchell
501 Turks Head Building
Providence, Rhode Island 02903

Nick Brustin, Esq.
Cochran, Neufeld & Scheck, LLP
99 Hudson Street, 8th Floor
New York, NY 10013

Michael Colucci, Esquire
Olenn & Penza
530 Greenwich Avenue
Warwick, Rhode Island 02888

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LEISA YOUNG, Individually and in her Capacity as Administratrix of the Estate of Cornel Young, Jr. | : | |
| vs | : | C.A. No. 01-288 S |
| CITY OF PROVIDENCE, et al. | : | |

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE OF DEFENDANTS CITY OF PROVIDENCE AND URBANO PRIGNANO, JR. TO EXCLUDE ALL EVIDENCE OF AND REFERENCE TO PARTINGTON'S OPINION TESTIMONY CONTAINED IN HIS DEPOSITION**

The Defendants City of Providence and Urbano Prignano, Jr. have filed a number of motions in limine requesting the exclusion not only of the evidence described below but also of other evidence and of the evidence mentioned in the motions in limine and supporting memoranda filed by the other Defendants in this matter, namely those filed by John Ryan and Kenneth Cohen.[1]

**EXCLUSION OF ALL USE OF AND REFERENCE TO PARTINGTON'S OPINION TESTIMONY CONTAINED IN HIS DEPOSITION**

At many points during his deposition, PPD Police Commissioner Partington - who was deposed as a fact witness - was asked to render opinions on various matters even though no foundation was ever laid and even though he was not first qualified as an expert in the various areas for which he was asked to render an opinion. Partington was asked to render opinions on the following various matters, among others:

For example, regarding the so-called Plunder Dome Scandal, Partington was asked to testify as follows;

[1] The motions in limine and supporting memoranda filed by the other Defendants in this matter; namely, John Ryan and Kenneth Cohen, are hereby included and incorporated by reference as if fully set forth.

> Q. Would you agree that the conduct he admitted to (in the Cianci trial) compromised the integrity of the entire department?
>
> A. It certainly reflected on the department, yes.
>
> Q. Would you agree that to the extent that other officers and supervisors were aware that Chief Prignano had provided source materials to certain officers and not others, would you agree that the message to those officers would be that the rules and regulations of the department don't matter?
>
> A. It's the bottom of the barrel.
>
> Q. Would you agree that one of the most important responsibilities of a Chief of Police is to lead by example?
>
> A. Absolutely.
>
> Q. And if the Chief of Police is lying and cheating, he certainly can't expect that the officers in his chain of command would act any differently, correct?
>
> A. That is correct.
>
> Q. Would you agree that even if officers believed that the Chief of Police is engaging in serious misconduct without any hard proof, that's a serious problem with the chain of command?
>
> A. Again, no one knocked at my door and volunteered anything like that. The first I heard about anything to do about testing is what I testified to.
>
> Q. Would you agree that the conduct that Chief Prignano admitted to in the Cianci trial was conduct that negatively impacted all of his supervisory responsibilities?
>
> A. Absolutely.[2]

For example, regarding the so-called friendly fire incidents in other police departments, the taking of "cover" by officers under fire, and the training relative thereto, Partington was asked to testify as follows:

---

[2] Partington's deposition pages 68 line 22 to 72 line 12.

Q. I take it you understood long before the Young incident that officers taking action off-duty are at a substantial risk?

A. Definitely.[3]

Q. And in regard to training, one of the things you try to focus on is to try to ensure that officers act instinctively based on their training when in a situation when they're afraid, correct?

A. I don't know how they felt. I'm sure their adrenalin . . .

Q. I'm asking generally. Would you agree with that?

A. Yes.

Q. And . . . wouldn't you agree part of the purpose of training is to create in those officers an instinctual response before saying, "Drop the gun," they announce they're police officers?

Q. Would you agree that's part of training?

A. Yes.

Q. And the reason they do that in the academy and in your department or any other department is to create a reaction in officers when faced with a dangerous situation, they always announce they're police officers, correct?

A. Correct, but I don't want to get hypothetical.

Q. Would you agree that one of the primary areas of training in the Providence Police Department, in any organization you've been involved in, is to maintain cover in connection with any potentially lethal situation?

A. Yes, I would say so.

Q. And there is a couple of reasons for that; is that right?

A. Yeah.

Q. One of reasons is to protect the officer, correct?

A. Yup.

---

[3] Partington's deposition page 73 line 10-13.

Q. Another reason, though, would be that if an officer leaves cover when they shouldn't, they could jeopardize the lives of others, correct?

A. Absolutely.[4]

It should first be mentioned that Partington's deposition testimony respecting the plunder-dome" matter, the "promotional scandal" matter, the Maggiacomo matter and other such matters pertaining to Plaintiff's so-called evidence of "Systemic deficiencies" should be excluded for all the reasons stated earlier. In addition, Partington - who was deposed as a fact witness - was asked to render opinions on various matters even though he was not first qualified as an expert under Rule 702 in the various areas and matters for which he was asked to render an opinion,[5] no foundation was ever laid for his opinion,[6] and the basis for his opinion was never stated in accordance with Rule 705.[7]

In addition, expert opinion may be excluded under Rule 403:[8] For example, in

---

[4] Partington's deposition pages 129 line 17 to 133 line 11.

[5] Even as to witnesses who have been qualified as an expert, "An expert" qualified to give an opinion on one subject is not necessarily qualified to opine on others." Rogers v. Raymark Industries, Inc., 922 F.2d 1425, 1431 (9th Cir. 1991)." Franklin v. City of Boise, 806 F.Supp. 879, 890 (D.Idaho, 1992).

[6] See, e.g., Trevino v. Gates, 99 F.3d 911, 922-923 (C.A. 9 (Cal.), 1996) where the Court observed:

> Trevino also appeals the district court's exclusion of expert testimony for lack of foundation . . . "[W]here foundational facts demonstrating relevancy . . . are not sufficiently established, exclusion of proffered expert testimony is justified." . . .
> Two experts were excluded: an economist to project Bahena's future income and a domestic relations lawyer to opine how much of the future income stream Bahena could have been required to pay Trevino's mother as child support. Both opinions were predicated on the assumption that Behena was employed as a full time mechanic when he was killed. The only foundation laid for this assumption was testimony that (1) Behana left in the morning and returned in the evening; (2) he gave Trevino's mother money at fairly regular intervals and (3) he was observed on a few occasions working on cars. There were no pay stubs, no W-2's, no tax returns, no cancelled checks, and no employer testimony offered as foundational evidence. Given the state of the record, it was not manifestly erroneous for the district court to exclude the expert testimony for lack of foundation. See Shatkin v. McDonnell Douglas Corp., 727 F.2d 202, 207 (2nd Cir. 1984) (vague assurances about future support are not an adequate foundation for expert testimony on future income).

[7] As stated by the First Circuit in SMS Systems Maintenance Services, Inc. v. Digital Equipment Corp., 188 F.3d 11, 25 (1st Cir. 1999) "Expert testimony that offers only a bare conclusion is insufficient to prove the expert's point. See Mid-State Fertilizer Co. v. Exchange Nat'l Bank, 877 F.2d 1333, 1339 (7th Cir. 1989) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.").

[8] See, e.g., the advisory committee not to Rule 704.

Soller v. Moore, 84 F.3d 964 (7th Cir., 1996) a mother who was the administrator of her son's estate brought a §1983 excessive force claim against an *off-duty* police officer by the name of Moore who had relentlessly pursued and then stopped her drunk son and his friend who were driving erratically in a "Beretta." Moore chased and then stopped the plaintiff's drunk son and his friend because their erratic driving had caused Moore to drive over a median barrier and to thereby damage his wife's car. During the trial, the plaintiff called the assistant chief of police by the name of Graham who had testified during his *deposition* that certain standards adopted by the International Association for the Chief's of Police (IACP) "made sense". Those IACP standards which the plaintiff (Soller) sought to introduce contained a "prohibition against off-duty officers engaging in traffic stops under circumstances where they are personally involved in the infraction." In sustaining the trial court's exclusion of that evidence, the Circuit Court observed:

> Even assuming relevancy, it must be emphasized that Rule 403 of the Federal Rules of Evidence authorizes the district courts to exclude relevant evidence if its probative value is substantially outweighed by other considerations, including unfair prejudice, confusion of issues, and considerations based on delay.
>
> Soller . . . contends that the court abused its discretion when it stopped her from offering documentary evidence from the IACP. We do not agree. She sought to introduce IACP standards and policies concerning the prohibition against off-duty officers engaging in traffic stops under circumstances where they are personally involved in the infraction. Through this evidence she sought to prove that, under the circumstances confronting Moore, he was not professionally obligated to pursue the Beretta and make the stop. Moore and the City countered that these "model" policies were not relevant to whether Moore acted within proper Milwaukee Police Department procedures and constitutional requirements with reference to his decisions and actions. The district court agreed with Moore and the City and kept the evidence out.

> The policies were simply not relevant to the issue of the reasonableness of Moore's actions in seizing Satermo. And furthermore, whether it is wise public policy to allow off-duty police officers to chase late night traffic violators is beside the point; the action is not unconstitutional.
>
> Similarly, the district court did not abuse its discretion when it precluded the testimony of Graham. . . Soller sought to introduce testimony from Graham regarding his response to the IACP model policies appeared to him to represent common sense, although they were not Milwaukee Police Department policy. Soller argued that the proffered testimony would establish not only that the IACP model policies made sense, but that they were not inconsistent with city of Milwaukee police policy. In ruling on defendants' motion in limine to exclude this testimony, the district court read both the IACP model policies and Graham's deposition testimony regarding those policies. The judge concluded that the issue was what policies Moore was bound to and guided by. Since Graham did not state that the IACP model policies are Milwaukee's policy, even though he agreed that they made sense, the evidence was properly excluded

Consequently, Graham's testimony that the IACP standards made sense was properly excluded under Rule 403 because the Milwaukee Police Department's policy of allowing personally involved off-duty police officers to effectuate traffic stops was not itself unconstitutional and therefore had little relevant in comparison to its potential to prejudice the jury. In similar vein, Partington's testimony has very little relevance in comparison to its great potential for prejudice because irrespective of whether or not the items he rendered opinions on were PPD policy, those polices were not in and of themselves unconstitutional. That is, the probative value of whether or not Partington agreed or disagreed with certain training practices - especially where it has not first been demonstrated that the PPD's training practices are constitutionally insufficient - is greatly outweighed by the potential to prejudice the jury. As cogently stated by the Court in the pre-eminent Section 1983 "failure to train" case, namely <u>City of Canton, Ohio v.</u>

Harris, 489 U.S. 378, 390-391, 109 S.Ct. 1197, 1206 (U.S. 1989):

> Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal.

Clearly, Partington's opinion has little or no probative value in comparison to its enormous potential to prejudice the jury.

Since the First Circuit rendered its decision in Young v. City of Providence, 404 F.3d 4 (1st Cir. 2005), Plaintiff has made much of the fact that the Court cited Partington's deposition testimony. However, that testimony was recited with respect to the summary judgment decision in a light most favorable to the Plaintiff. The summary judgment standard is not the same as the trial standard. That decision is irrelevant to the instant motion.

The Plaintiff will attempt to introduce testimony from Partington based on previously improperly formed questions and questions for which no foundation was laid. This is merely a back-door attempt to introduce into evidence that which is inadmissible in the form it was obtained.

WHEREFORE, Defendants City of Providence and Urbano Prignano, Jr. pray that their Motion in Limine to exclude any and all evidence pertaining to the exclusion of all evidence of and reference to Partington's opinion testimony contained in his deposition be granted.

Respectfully submitted,

Defendants
City of Providence and Urbano Prignano, Jr.

By their Attorney,

JOSEPH M. FERNANDEZ
CITY SOLICITOR

Kevin F. McHugh (#3927)
Senior Assistant City Solicitor
Providence Law Department
275 Westminster Street, Suite 200
Providence, Rhode Island
(401) 421-7740 Ext 333
(401) 351-7596 (Fax)

**CERTIFICATION**

I hereby certify that I mailed a true copy of the within to the Attorney(s) of Record as listed below on this 7th day of October, 2005.

Robert B. Mann, Esquire
Mann & Mitchell
501 Turks Head Building
Providence, Rhode Island 02903

Nick Brustin, Esq.
Cochran, Neufeld & Scheck, LLP
99 Hudson Street, 8th Floor
New York, NY 10013

Michael Colucci, Esquire
Olenn & Penza
530 Greenwich Avenue
Warwick, Rhode Island 02888