UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LEISA YOUNG, Individually and in her Capacity as Administratrix of the Estate of Cornel Young, Jr. | : | |
| vs | : | C.A. No. 01-288 S |
| CITY OF PROVIDENCE, et al. | : | |

**MOTION IN LIMINE OF DEFENDANTS CITY OF PROVIDENCE AND URBANO PRIGNANO, JR. TO EXCLUDE ALL EVIDENCE OF AND REFERENCE TO POST-INCIDENT GENERAL ORDER ON OFF-DUTY CONDUCT (GENERAL ORDER 2001-22 SERIES) AND THE LACK OF A POST-INCIDENT POLICY AND PROCEDURES' INVESTIGATION**

The Defendants City of Providence and Urbano Prignano, Jr. hereby move in limine to exclude any and all evidence pertaining to the following: **The exclusion of all evidence of and reference to the post-incident General Order on off-duty conduct (General Order 2001-22 Series) and the lack of a post-incident policy and procedures' investigation.)** In support hereof, Defendants hereby include and incorporate by reference as if fully set forth their memorandum submitted contemporaneously herewith:

Defendants
City of Providence and Urbano Prignano, Jr.

By their Attorney,

JOSEPH M. FERNANDEZ
CITY SOLICITOR

Kevin F. McHugh (#3927)
Senior Assistant City Solicitor
Providence Law Department
275 Westminster Street, Suite 200
Providence, Rhode Island
(401) 421-7740 Ext 333
(401) 351-7596 (Fax)

**CERTIFICATION**

I hereby certify that I mailed a true copy of the within to the Attorney(s) of Record as listed below on this 7th day of October, 2005.

Robert B. Mann, Esquire
Mann & Mitchell
501 Turks Head Building
Providence, Rhode Island 02903

Nick Brustin, Esq.
Cochran, Neufeld & Scheck, LLP
99 Hudson Street, 8th Floor
New York, NY 10013

Michael Colucci, Esquire
Olenn & Penza
530 Greenwich Avenue
Warwick, Rhode Island 02888

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LEISA YOUNG

VS C.A. NO. 01-288S

CITY OF PROVIDENCE, E TL

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE OF DEFENDANTS CITY OF PROVIDENCE AND URBANO PRIGNANO, JR. FOR THE EXCLUSION OF ALL EVIDENCE OF AND REFERENCE TO THE POST INCIDENT GENERAL ORDER ON OFF-DUTY CONDUCT (GENERAL ORDER 2001-22 SERIES) AND THE LACK OF A POST-INCIDENT POLICY AND PROCEDURES' INVESTIGATION**

The Defendants City of Providence and Urbano Prignano, Jr., have filed a number of motions in limine requesting the exclusion not only of the evidence described below but also of other evidence and of the evidence mentioned in the motions in limine and supporting memoranda filed by the other Defendants in this matter, namely those filed by John Ryan and Kenneth Cohen[1]

**EXCLUSION OF ALL EVIDENCE OF AND REFERENCE TO THE POST INCIDENT GENERAL ORDER ON OFF-DUTY CONDUCT (GENERAL ORDER 2001-22 SERIES) AND THE LACK OF A POST-INCIDENT POLICY AND PROCEDURES' INVESTIGATION**

Sullivan testified in his deposition that when he became the PPD's Chief of Police after the Young incident, "we looked at all our rules and regulations" and in so doing "changed the policy from mandatory to optional carrying firearms" by off duty officers[2] As Sullivan testified, the policy was changed because:

[1] The motions in limine and supporting memoranda filed by the other Defendants in this matter-namely John Ryan and Kenneth Cohen – are hereby included and incorporated by reference as if fully set forth.
[2] RS P178L5-10

I felt the policy in and of itself wasn't enforceable. So, if it wasn't enforceable, then we should be looking at streamlining our policies, the ones that are enforceable, and the ones that aren't change them[3]

Consequently, this change in PPD policy did not prohibit PPD officers from carrying firearms while off duty, but merely gave them the option not to carry firearms while off duty, and in addition, the policy regarding the off-duty carrying of firearms was changed – not because it was considered dangerous [4]– but simply because it "wasn't enforceable." In fact, Sullivan answered "No" when asked "Did you have any concerns that the policy as it was written prior to the Young shooting placed… (PPD) officers in situations that were unnecessarily dangerous?" Nevertheless, the Plaintiff has indicated [5] that she will seek to introduce the General Order on Off-duty Conduct implementing this policy change into evidence because it constitutes what she calls "post-event" evidence relevant to her Monell claim. Rather than admit that the real reason she seeks to use this evidence is the hope that it will be improperly construed by the jury as a subsequent remedial measure, the Plaintiff instead attempts to characterize this evidence as what she calls "post-event" evidence relevant to her Monell claim. In this respect, the Plaintiff has previously stated:

> Defendants'…(argument is) premised on the view that changes made subsequent to the Young shooting are not relevant. However, the First Circuit and other hold that post-event evidence is relevant to a Monell claim and is admissible…Indeed, in Foley v. City of Lowell, 948 F.2d 10, 14 n.3(1st Cir. 1991), the Court stated in response to the

[3] RS P181L20-24
[4] RS P182L4-8
[5] See "Plaintiff's Memorandum of Law in Response to Defendants Motion for a Protective Order" at footnote 1 stating that "For example, Defendant Sullivan stated that the off duty policy changes he made…were due to a longstanding concern that the policy was not enforceable, not because of the Young Shooting…"

> argument that only evidence stemming from the incident in question could be admitted, "[w]e reject so crabbed a reading of the law." Instead, the only question is relevance, whether the post-event evidence "sufficiently relates" to the incident in question. Id at 154. There, as in Bordanaro, it was relevant that "[t]here was no evidence of any policy revision or other change in course" following the incident in question. Id. At 15.

The fact that Plaintiff's reliance upon Foley is misplaced lies in her quote from Foley that "[t]here was no evidence of any policy revision or other change in course" following the incident in question: Plaintiff's reliance on Foley is misplaced because the plaintiff in Foley, Michael Foley, did not seek to introduce evidence of a change in policy, but rather sought to introduce evidence of similar police brutality incidents which occurred after the incident in question. That is, Foley, dealt with incidents – not a policy change – because Foley dealt with the admission into evidence of several markedly similar post-event incidents of misconduct where there had been no intervening change in the police departments' routine policy of ignoring such incidents. As Foley astutely observed:

> At trial, the plaintiff endeavored to prove that his beating at the hands of Lamothe (police officer)… was not an isolated event, but rather, the product of a municipal policy…of…indifference to the violation of constitutional rights by police officers. To this end, Foley (the plaintiff) presented a series of witnesses who laid various atrocities at the Department's doorstep…The testimony suggested that the Department routinely ignored complaints about the use of excessive force.

> At trial, the plaintiff endeavored to prove that his beating at the hands of Lamothe (police officer)… was not an isolated event, but rather, the produce of a municipal policy…of …indifference to the violation of constitutional rights by police offices. To this end, Foley (the plaintiff) presented a series of witnesses who laid various atrocities at the Department's doorstep…The testimony suggested that the Department routinely ignored complaints about the use of excessive force.

> In the course of this parade, …one Mark Finnegan… claimed to have been savaged by Lamothe…some six months after Foley and Lamothe had crossed swords. According to Finnegan, Lowell police officers had …handcuffed him, hit him, kicked him, and threw him upside down into a trash barrel…(and had then)urinated on him…(A)ctions taken subsequent to an event are admissible… to the extent that, they provide reliable insight into the policy in force at the time of the incident. See, e.g. Bordanaro, 871 F.2d at 1167 ("Post-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right".) [FN.3] We do not mean to imply that all post-event evidence is automatically admissible in a section 1983 "custom or policy" case. Rather, the question that must be asked when post evidence evidence is proffered is whether the evidence sufficiently relates to the central occurrences. See Sherrod v. Berry, 827 F.2d 195, 204-05 (7th Cir. 1987) (admission of evidence regarding separate suit brought against police officer upheld even though incident giving rise to separate suit occurred one month after the event upon which current litigation was based)…
>
> FN3. The defendant, essaying a narrow reading of Bordanaro, tells us that if such evidence is admissible at all, it must, as in Bordanaro, itself, arise directly out of the principal event. We reject so crabbed reading of law.
>
> … We discern no such abuse in the court's conclusion that the Finnigan incident bore upon the policy in effect six months prior…(T)he Foley and Finnegan vignettes had noticeable similarities. Indeed, the lack of restraint the police officers exhibited on both occasions itself suggested the existence of an official policy of tolerating imbrutage…The incidents occurred in fairly close temporal proximity. There was no evidence of any policy revision or other change in course during the subsequent interval. On the facts of this case, it was well within the trial court's discretion to conclude that the Finnegan incident was competent, if indirect evidence of a preexisting municipal policy of indifference.[6]

Consequently, Foley did not rule that a change in policy was admissible, but only that post event incidents – that are causally connected to the incident giving rise to the alleged constitutional tort because they share a similarity with that incident may be

---

[6] Foley v. City of Lowell, Mass., 948 F.2d 10, 13-15 (1st Cir. 1991)

admitted for the limited purpose of showing municipal policy. Such evidence, moreover, is admissible only where there is no intervening change in policy, because where there has been a change in policy it cannot be said that the post incident events are causally connected to the incident giving rise to the alleged constitutional tort. In the present case, the "changed...policy from mandatory to optional carrying firearms" by off duty officers is not admissible as a so-called "post-incident event" not only because it is not an "incident", but also because it represents a change in the policy pertaining to the carrying of firearms by off-duty police offices and therefore cannot be causally connected to the incident giving rise to the alleged constitutional tort. Simply put, the evidence is not admissible because it is proscribed by Foley as "evidence of...(a) policy revision or other change in course during the subsequent interval" between the commission of the alleged constitutional tort and the happening of the similar post event incidents. In fact, were Plaintiff to argue that the evidence of a "changed ...policy from mandatory to optional carrying firearms" by off-duty officers is causally connected to the incident in question, then it is submitted that such evidence would constitute the highly prejudicial evidence of a subsequent remedial measure absolutely proscribed by rule 407, namely a measure taken after the event that "would have made the event less likely to occur". Finally, it should be noted that although Rhode Island's Rule 407 allows the admission of subsequent remedial measures, the Federal Rules of Evidence apply to this Federal Court case and proscribe its admission not only under Rule 407 but also under the Rule 403 balancing test.

Plaintiff has also indicated that she will seek to introduce evidence that the city failed to conduct a policies and procedure investigation after the incident. The city also objects to this evidence as being irrelevant.

In Bordanano v. McLeod, 871 F.2d 1151 (1st Cir. 1989), the First Circuit allowed in post-event evidence of the lack of proper internal investigation of the attack the police officers made against the plaintiffs and of the failure to take disciplinary action against the officers. The Judge admitted that evidence on the grounds that it would show what customs or policies were in effect before the date of the attack.

Here, there is no question as to what policy was in effect as it was a written policy. There is no dispute over that.

Moreover, in Bordanaro supra, the officers were indicted and convicted.

In the instant case, the officers were never indicted. Moreover, there is no dispute that it was the Providence Police Department that conducted the investigation into this incident. They were the ones who interviewed all of the witnesses and turned in their investigation to the Attorney General.

Even if the Court were to find the evidence to be irrelevant, it is still unduly prejudicial under Rule 403. Allowing into evidence that the police department didn't conduct a post-incident investigation of policies and procedures implies that the policy at issue was deficient itself. That is a question for the jury to decide based on expert testimony.

WHEREFORE, Defendants City of Providence and Urbano Prignano, Jr. pray that their Motion in Limine to exclude any and all evidence of and reference to the post-

incident general order on off-duty conduct (General Order 2001-22 Series) and the lack of a post-incident policy and procedures' investigation be granted.

Respectfully submitted,

Defendants,
City of Providence, Urbano Prignano, Jr.,

By its Attorney:

Kevin F. McHugh (#3927)
Senior Assistant City Solicitor
City of Providence – Law Department
275 Westminster Street Suite 200
Providence, Rhode Island 02903
(401) 421-7740 Ext. 333
(401) 351-7596 Fax

**CERTIFICATION**

I hereby certify that I mailed a true copy of the within to the Attorneys of Record as listed below on this 7th day of October, 2005.

Michael Colucci, Esquire
Olenn & Penza
530 Greenwich Avenue
Warwick, Rhode Island 02888

Robert B. Mann, Esquire
Mann & Mitchell
501 Turks Head Building
Providence, Rhode Island 02903

Nick Brustin, Esquire
Cochran, Neufeld & Scheck
99 Hudson Street 8th Floor
New York, NY 10013

10/06/2005 THU 11:49 FAX 401 243 6442 H R B 002/004

PROVIDENCE POLICE DEPARTMENT

HEADQUARTERS

# COLONEL RICHARD T. SULLIVAN
## Chief of Police

**September 1, 2001**

**GENERAL ORDER #22**
**Series of 2001**

**TO: ALL COMMANDING OFFICERS:**

I. **Purpose:** The purpose of this order is to amend rule 202.1 dealing with the carrying of firearms while in an off-duty status and rule 202.2 dealing with an officer's duty and responsibility to take action in response to criminal activity while in an off-duty status. (The guidelines accompanying the rules were drawn from in-service training materials disseminated at the "Use of Deadly Force" training update that was done in June of 2000.)

II. **Policy: The following changes to this department's policy of carrying firearms while "off-duty" are:**

A. 202.1 : A member may carry a firearm while off-duty in accordance with Rhode Island General Laws section 11-47-9. It shall not be necessary that a member, who chooses to carry a firearm off-duty, carry his service weapon, however, any weapon that an officer chooses to carry must be inspected, approved, test fired and registered with the department armorer. A shell casing and bullet from the weapon shall be maintained by the department armorer for identification purposes.

B. 202.2: A member of the police department who becomes aware of an incident which poses a threat of serious bodily harm or death to some individual shall take "action" to minimize the risk of serious bodily harm or death. "Action" under this provision is fulfilled by reporting the incident and shall not require the officer to place him or herself in a position of peril. An officer who is faced with such a circumstance should act in accordance with the guidelines as spelled out in this General Order.

III. **Procedure:**

A. First, Go to a safe location and call 911.

209 Fountain Street, Providence, Rhode Island 02903

B. Second, when you encounter a situation off-duty that seems to require police action, you must consciously evaluate whether your involvement is necessary or desirable, given the circumstances. How important and urgent is the need for your intervention?

C. A number of circumstances may impact your decision to get involved in any situation. First, you may be alone, with family members or other non-police personnel. Second, it is unlikely that you will have all of the necessary police equipment while off-duty, for example; pepper spray, baton, handcuffs or radio. You may be faced with multiple suspects or unaware of hidden suspects. There may also be environmental factors working against you such as: lack of cover, crowds of civilians, darkness, etc. Your intervention may actually spark an escalation of violence. Therefore, your best plan of action may be to:

1. Gather accurate intelligence like a good witness until uniformed, on-duty officers arrive.
2. Remember, you have NO LEGAL OR DEPARTMENTAL obligation to get involved, especially if such intervention places you in a position of peril or such intervention requires that you behave recklessly, carelessly or in a suicidal manner.
3. While department policy mandates that you "take action" when witnessing a serious crime, that obligation is fulfilled by calling the police and monitoring the situation from a SAFE vantage point.
4. Most survival-conscious officers have trained themselves NOT to intervene off-duty UNLESS their life or the life of another innocent party is IMMINENTLY in danger. In other words, you should only consider intervention when deadly force would be justified. You should not intervene just to make an arrest while off-duty. The decision to take action, beyond simply reporting, is a personal one and is not a requirement of this department.
5. If you decide you must get involved, attempt to have someone call 911 advising the operator that an off-duty officer is on scene. Have the caller inform the operator if you are armed. If possible, have them describe you and your clothing. This will effect the mindset of the responding officers. When uniformed police officers arrive, have your badge out and visible. (if you carry your shield while off-duty, some officers carry only their photo credentials). Do not rely on showing your identification as a means of providing any protection. At a distance, in dim light and under stress, your badge may not be seen. Or, the identification may not be given credibility if the responding officers do not recognize you personally.
6. Some trainers advise officers to hold their badge next to their gun for the best chance of being seen because the eyes of the responding officers are most likely to go immediately to your drawn firearm. You're probably safer to RE-HOLSTER your gun when other officers arrive, unless doing so would put you and the responding officers or innocent civilians, in jeopardy. Until the responding officers sort out who is who, your gun is your greatest personal liability.
7. If you have cover, maintain it. You can communicate verbally from there.

8. Make your hands visible. Having responding officers see that you are unarmed and non-threatening will work to calm them and protect you.
9. Verbally identify yourself as a police officer—not once and not in a normal tone of voice, but repeatedly and very loud. Keep shouting out: "POLICE! DON'T SHOOT! OFF-DUTY OFFICER!" until you get acknowledgment and directions as to what you should do. Remember, the noise and excitement of the scene, combined with stress induced auditory blocking may prevent responding officers from hearing you initially.
10. When commands are issued by the responding officers, follow them promptly and completely. Expect to be treated like a suspect until your law enforcement status is verified.
11. When carrying a firearm off-duty (including finishing or beginning a tour of duty), it shall be concealed from public view by an outer jacket, shirt, sweater etc. If an off-duty officer's firearm is observed and prompts the response of police or security officials, the off-duty officer should respond in a manner consistent with this policy.
12. Finally, the most important rule of all: If you have a gun in your hand, NEVER, EVER turn toward an on-duty officer

IV. Reporting / Compliance: Whenever an officer becomes involved in an incident while in an off-duty capacity, he or she shall notify the commanding officer of the Patrol Bureau as soon as possible. The commanding officer shall require a written report on the incident that will be forwarded to the appropriate divisions. This report shall also be reviewed by the Training Academy staff in order to evaluate and update training for "off-duty" response.

V. Receipt/Dissemination: This policy shall be disseminated to all members of this department and shall be signed for as an acknowledgment of receipt.

APPROVED:

JOHN J. PARTINGTON
Commissioner
Department of Public Safety

RICHARD T. SULLIVAN
Colonel
Chief of Police