UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LEISA YOUNG, In her Capacity as Administratrix of the Estate of Cornel Young, Jr. | ) ) ) | |
| v. | ) | No. C.A. No. 01-288 S |
| CITY OF PROVIDENCE by and through its treasurer, Stephen Napolitano, et al | ) ) ) | |

PLAINTIFF'S OBJECTION TO MOTION OF DEFENDANTS CITY OF PROVIDENCE AND URBANO PRIGNANO, JR. TO EXCLUDE ALL EVIDENCE OF AND REFERENCE TO PARTINGTON'S OPINION TESTIMONY CONTAINED IN HIS DEPOSITION

Now comes the plaintiff and objects and responds to the motion of defendants City of Providence and Urbano Prignano, Jr. to exclude all evidence of and reference to Partington's opinion testimony contained in his deposition. In support of said objection the plaintiff submits the attached memorandum of law.

LEISA YOUNG, in her capacity as
Administratrix of the Estate of
Cornel Young Jr.,
By her Attorneys

Robert B. Mann #0153
Mann & Mitchell
One Turks Head Pl., Ste. 501
Providence, RI 02903
(401) 351-5770

Barry Scheck, Esq. #4612
COCHRAN, NEUFELD, & SCHECK
99 Hudson Street, 8th Floor
New York, NY 10013
212-965-9084

Nick Brustin, Esq. #0605
COCHRAN, NEUFELD, & SCHECK
99 Hudson Street, 8th Floor
New York, NY 10013
212-965-9084

**Certification**

I hereby certify that a copy of the within document was mailed or delivered to the person or offices of Kevin McHugh, Esq., City Solicitors Office, 275 Westminster St., Suite 200, Providence, R.I. 02903 and Michael Colucci, Esq., Olenn & Penza, LLP, 530 Greenwich Ave., Warwick, RI 02886 on the 18 day of October, 2005.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LEISA YOUNG, in her Capacity as Administratrix of the Estate of Cornel Young, Jr. | ) ) ) | |
| v. | ) ) | No. C.A. No. 01-288ML |
| CITY OF PROVIDENCE by and through its treasurer, Stephen Napolitano; et. al | ) ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS CITY OF PROVIDENCE AND URBANO PRIGNANO, Jr. MOTION TO EXCLUDE ALL EVIDENCE OF AND REFERENCE TO PARTINGTON'S OPINION TESTIMONY CONTAINED IN HIS DEPOSITION**

Defendants move to exclude "all use of and reference to Partington's opinion testimony" in his deposition. Plaintiff has the right to use such deposition testimony as admissions. They are substantive evidence, not just impeachment evidence. The motion by defendants is clearly a last ditch effort to avoid liability for a series of remarkable, binding admissions by a PPD policymaker concerning the PPD's deliberate indifference as to off duty policy and training which were specifically relied upon the Circuit in rejecting defendants' motions for summary judgment. For example the Circuit held:

> A jury could also conclude from the testimony of Commissioner Partington that there was a Providence policy or custom of not training PPD officers on the inherent risks of the always armed/always on-duty policy (and how to avoid them) in a way that was deliberately indifferent and caused the violation of Cornel's constitutional rights. And although it is unclear whether Chief Prignano was a final policymaker for the municipality on PPD training issues, Commissioner Partington clearly was such a final policymaker: as Commissioner of Public Safety he had been delegated broad policymaking authority over PPD procedures by the municipality.

Young v. City of Providence, 404 F.3d at 30, n. 21 (lst Cir. 2005.

The Circuit further held:

> Although there was no evidence of a prior friendly fire shooting, a jury could find from the testimony of Commissioner Partington, Melaragno, and Boehm that the department knew that there was a high risk that absent particularized training on avoiding off-duty misidentifications, and given the department's always armed/always on-duty policy, friendly fire shootings were likely to occur. A jury could conclude that the severity of the

> consequences of a friendly fire shooting forced the department to take notice of the high risk despite the rarity of such an incident. . . . Beyond Dr. Fyfe, the statements of Commissioner Partington and Ryan could support a view that the City knew its training program to be seriously deficient.

Young v. City of Providence, 404 F.3d at 28-29.

The Court also said:

> The testimony of Commissioner Partington and Melarango establishes that even though identification of off-duty officers might appear to be a matter of common sense, in situations of high stress such as where an officer is evaluating the threat level of an unknown individual armed with a gun, officers tend to fall back on their training.

Young v. City of Providence, 404 F.3d at 29.

In reaching these findings, the Circuit relied on the following evidence:

> Commissioner Partington agreed with the assessment of plaintiff's expert, Dr. James Fyfe, that "off-duty encounters, and the risk they might be interrupted by on-duty police, are a well-recognized hazard of urban policing for which officers must be carefully schooled by policy and training." He agreed with Fyfe that an always armed/always on-duty policy was inherently dangerous, and that given the department's always armed/always on-duty policy, specific [*31] training and a protocol were necessary to avoid friendly fire shootings of off-duty officers. He further agreed with Fyfe that "where such training and policy do not exist, it can be expected that off-duty officers will intervene unwisely, that on-duty officers will mistake them for suspects, and that unnecessary blood will be shed by the public and by officers." More specifically, Commissioner Partington testified that interactions between on-duty and off-duty officers were very high stress situations, and training was needed for the very high stress situations that officers face, since officers tend to fall back on their training in these situations. Partington agreed with Fyfe that training on off-duty/on-duty misidentification must, inter alia, "provide instruction on the risks associated with encountering other law enforcement personnel while taking off-duty action" and "sensitize officers to the possibility that, while taking on-duty action, they may encounter off-duty personnel." Yet Partington testified that the only PPD training on off-duty/on-duty interactions he was aware of was that an officer should not get involved while off-duty unless a situation is life threatening [*32] (which is contrary to the language of the policy and the testimony of many other witnesses). He testified that the PPD also offered Range 2000 training, but admitted that, in his view, this did not "deal[] with the problem of friendly fire incidents."

Young v. City of Providence, 404 F.3d at 18-19.

Defendants' suggestion that the Circuit's reliance on Partington's admissions is "irrelevant to the instant motion" should be rejected. Def's Memo at 7. In making this

argument the defendants assert that there is a different standard for summary judgment and trials and the Court of Appeals was considering the case only from the perspective of summary judgment. . In fact, the standard for the admissibility of evidence is the same for trials and summary judgment. The Second Circuit recently stated:

> The evidence considered on summary judgment must generally be admissible evidence. See, e.g.Amorgianos v. AMTRAK, 303 F.3d 256, 271 (2d Cir. 2002); [*25] Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999). Even on summary judgment, a district court "has wide discretion in determining which evidence is admissible, [and] we review its evidentiary rulings for manifest error." Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998); see also Raskin v. Wyatt Co., 125 F.3d 55, 65-66 (2d Cir. 1997) ("The principles governing admissibility of evidence do not change on a motion for summary judgment.").

LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 2005 U.S. App. LEXIS 19775, 24-25 (2d Cir. 2005).

The Fifth Circuit has been equally clear, stating:

> ("The admissibility of summary judgment evidence is subject to the same rules of admissibility applicable to a trial."). Pegram has not challenged the admissibility of the evidence at issue -- only the court's decision to consider it.

Pegram v. Honeywell, Inc., 361 F.3d 272, 285 (5th Cir. 2004)

In considering a summary judgment motion, the Court views the evidence in the light most favorable to the party opposing the motion, but the Court considers only admissible evidence. The fact that the Court of Appeals considered the deposition testimony of Partington means the Court considered the testimony admissible evidence, The Court could not consider inadmissible evidence in assessing a motion for summary judgment.

In light of the Circuit's findings and the reasons stated below, defendants motion should be denied.

Plaintiff should note at the outset that she plans only on questioning Partington regarding

this policy and training evidence, which he has intimate knowledge of as a PPD policymaker responsible for ensuring that those functions were adequately performed. Further, Partington's deposition testimony would only be referred to for the always-proper purpose of impeachment, in case Partington contradicts prior testimony.

The City ignores the fact that the Circuit determined, as described above, that Partington was a final policy-maker, and as such he is in a unique position to testify regarding the City's deliberate indifference.[1] Indeed, as a policymaker he binds the City in his actions, and as to his own state of mind exhibiting deliberate indifference with regard to training. First, under Section 1983, liability may be premised on the direct action of a policymaker.[2] His statements, then, that the City had improper training, are admissions which bind the City.[3] They may be damaging, but the law is that the deliberate indifference of a policymaker creates municipal liability. His actual knowledge of the City's failure to provide adequate training, discipline, or screening, by itself holds the City liable. Second, the City may be liable for the deliberate indifference of a policymaker, based on the failure to adequately train officers. Bordanaro v. McLeod, 871 F.2d

---

[1]Partington was the civilian head of the police department, responsible for PPD discipline and administration, including all rules and regulations, which he signed off on. **Young v. City of Providence, 404 F.3d at 15;** (Partington 11, 15, 20.) See also under the Providence City Charter, cited in May 30, 2003, Memorandum and Order at 12. Partington and Prignano have testified that Partington delegated responsibility for PPD discipline to Prignano (Partington 37, Prig. 21-23.) Partington delegated and shared responsibility and authority for policymaking and training with Prignano, and in particular enforcing and training on off duty issues. (Id. at 23, 27-28, 32.)

[2]Pembaur v. City of Cincinatti, 475 US 469, 480-81 (1986); Comfort v. Town of Pittsfield, 924 F.Supp. 1219, 1233-34 (D.Me. 1996).

[3]Williams v. Kaufman County, 2003 WL 21962582 (5th Cir. Aug. 19, 2003) (finding that Sheriff's testimony bound the municipality; "Harris testified that he is the final policymaker for law enforcement matters in the County. Harris and others have testified as well that both the strip search and lengthy detention of the plaintiffs were conducted according to the Sheriff Department's unwritten policy for executing "hazardous" warrants. As a result, Harris's actions as policymaker were undeniably the moving force behind, and the direct cause of, the violation of plaintiffs' constitutional rights, thereby establishing the County's municipal liability.")

1151, 1157-59 (1st Cir. 1989). The City is liable if the policymaker is on notice, where the need for training, discipline or screening is so obvious that the policymaker knew or should have known that constitutional violations would result. Id. at 1159, 1161-2. Thus, it is directly relevant whether Partington, a policymaker, was on notice about the obvious need for training. Partington's testimony that the need for such training was in fact obvious to him, is an admission of notice and deliberate indifference.

Indeed, such admissions are to plaintiff's knowledge unprecedented and illustrate the degree to which City policymakers were acting with deliberate indifference. Defendants do not specify the statements to which they are referring, though they name certain statements relating to training and PPD corruption. Thus we provide some examples below of the testimony of Partington, relating to each of the claims plaintiff has brought. All of it is relevant, and simply relates to his understanding of events during his tenure as a City policymaker overseeing these areas.

**Training**

Partington testified that knowing of the dangers of the PPD's policy and the need for clear, comprehensive training and written protocols on off duty action, he did not ensure that the policy was changed, because he mistakenly thought that Prignano had reformed the policy six years before. (Partington 100-06, 108-10.) This is direct evidence of his state of mind as a policymaker as well as facts that indicate actual or constructive notice of the PPD's need for policy and training. It also goes to Prignano's state of mind. Prignano refused to alter PPD policy and training, at any time through his retirement over a year after the Young shooting. (Id. at 164-5,170, 179-80, 184.) Prignano did not believe there were any deficiencies in PPD training that

had caused the shooting, and that issues relating to off-duty conduct are "common sense" and do not require training because common sense cannot be trained. (Prig. 48, 78, 91-2, 165-66, FR 7.) Thus, PPD policymakers, knowing years before the Young shooting of the grave risks their policy and training caused, took no action to reform either.

Partington acknowledged he knew of the risks of off duty action and that it is an essential subject for training, because of the potentially tragic consequences for an off-duty officer failing to identify himself properly (Partington 81-2, 209, 211-2 (agreeing in substance with Fyfe Report at 6-7)). This is relevant as to his state of mind, in not ensuring that the training he believed necessary was provided.

Indeed, Partington agreed that despite Prignano's belief, common sense is insufficient to guide officers engaging in critical tasks and for that reason officers must be drilled to follow policy and fall back on their training in high stress situations, such as those involving off duty action. (Taylor 89-92, 195; Partington 81, Fyfe Report 7-8). He understood that the PPD's policy requiring 24 hour direct action made it particularly critical that officers receive specific guidance about the risks of misidentification and on how to avoid misidentifying off duty officers (Partington 208-12.)

Partington understood that minimally adequate policies also include a written protocol designed to avoid misidentification and friendly fire tragedies, with steps for both on duty and off duty officers to follow, and which is the subject of comprehensive training. (Partington 209-11). This is relevant to his expectation that such a protocol be provided, which is evidence of the City's deliberate indifference, since despite his actual knowledge of the need for such a protocol, no such protocol was put into place by the PPD until a year and a half after Young's death.

Partington provided testimony regarding defendant Ryan's supervision of training and his reputation for truthfulness. He stated that Ryan lied to him in the course of his official responsibilities. (Partington 67-8). This evidence is separately admissible under Fed. R. Evid. Rule 608 as reputation for untruthfulness and a specific instance of untruthfulness. See memo re cheating scandal

Partington also had concerns regarding Ryan's overall supervision with regard to training. Partington later removed Ryan from his position directing the training academy due to concerns with his supervision. (Partington Dep. at 56-7, 67-68, 208-9 (agreeing in substance with Fyfe Report at 2-3)).

Partington also stated that Prignano's admissions to assisting officers to cheat on promotions exams violated PPD rules and regulations, compromised the integrity of the department, and went to the core of his supervisory responsibilities; that the Chief leads by example and if he is lying and cheating, he can not expect other officers to act differently; that such misconduct negatively impacted all of his supervisory responsibilities and can not be compartmentalized; Prignano's conduct was shocking, "the bottom of the barrel," Prignano should have been fired and could not possibly lead the PPD. (Id. at 67-70, 208-9 (agreeing in substance with FR 2-3).) Partington later removed Ryan's supervisory responsibilities including his position directing the training academy, due to concerns with his supervision generally. (Id. 56-7.) Partington testified that he believed Prignano, like Ryan, lied to him about their involvement in the promotions scandal. (Partington 67-70.) All of this evidence goes directly to Prignano's failures to provide adequate supervision, and the policymaker's actual notice and deliberate indifference to the problem. See cheating memo

Partington testified that he asked Internal Affairs to investigate Lt. Timothy Lee's statements to the press in the wake of the Young shooting, in which Lee stated in substance he believed Solitro and Saraiva would be exonerated of wrongdoing; Lee violated PPD's rule prohibiting officers from speaking to the press without permission generally and during an open investigation. (142, 48.) Partington had no idea why Ryan and Prignano asked Lee to then make additional statements (Lee 45-6, Ryan II 327-30); this was also a serious violation by Ryan, Prignano and Lee - they could have potentially been disciplined, and it was "totally improper." (Partington 144-45.) This testimony is relevant as an additional failure of the PPD to train. See memorandum re post incident.evidence.

None of the above testimony referred to is "opinion" testimony. Partington gave specific testimony about the effect that misconduct by high ranking officers had on the department, and that he saw the critical need for and thought the PPD provided, training on off duty issues. The subject matter of Partington's testimony is no different from that of Prignano, Ryan, Simoneau, or any of the other high ranking persons who describe their understanding of policy and actions of PPD officials during the relevant time periods. All of these areas of testimony relate to his supervision of the PPD; they relate to the actions of his subordinates, and to the training they performed and they demonstrate his actual or constructive notice of deficiencies and deliberate indifference as a City policymaker. None are expert matters; all related to what he did and what he expected.

The one case defendants cite involves calling a police chief to testify as to "documentary evidence from the IACP" an organization that drafts model policies for police departments. Soler v. Moore, 84 F.3d 964, 968 (7th Cir. 1996). In particular, the court there concluded that the

IACP policy cited was not on point as to the reasonableness of the conduct of an officer during a seizure, where the policies were only "related to preseizure activity."

That case has no relevance here; Partington will not be asked to testify concerning expert matters such as what documented model policies are or should be. Dr. Fyfe will testify as to such matters, and only as to policies that are on point (defendants' expert, based on his report relying on CALEA standards, will do the same). Instead, Partington will testify to what he knew to be PPD policy and training, whether the PPD's policy was adequate, and whether as policymaker, he had asked and expected that it be changed.

Again, plaintiff has no intention of introducing Partington's deposition as documentary evidence. Plaintiff will simply ask Partington questions about his understanding relating to PPD policy and misconduct and failures to discipline defendants and other PPD officers. If he acknowledges the substance of a prior statement, that testimony is admissible. "When a witness, on the stand and under oath, acknowledges that a prior statement is his own statement and is truthful, then the witness adopts the prior statement as his present testimony and there is no hearsay problem." Amarin Plastics, Inc. v. Maryland Cup Corp., 946 F.2d 147, 153 (1st Cir.1991).

However, if he contradicts his testimony from his deposition, plaintiff is certainly entitled to use that prior testimony as impeachment. Deposition testimony may always be used for purposes of impeachment of a witness. Advisory Committee notes to Rule 801(d)(1)(a) ("Prior inconsistent statements traditionally have been admissible to impeach.") Indeed, generally, even non deposition testimony hearsay evidence that would otherwise be inadmissible is admissible for purposes of impeachment. See Fed. R. Evid. 613 (a witness may be examined regarding prior

inconsistent statements); United States v. Winchenbach, 197 F.3d 548, 558 (1st Cir. 1999) (it is a "time- honored tenet that prior inconsistent statements ordinarily may be used to impeach a witness's credibility"); Fireman's Fund Ins. Co. v. Thien, 8 F.3d 307 (8th Cir. 1993) same); Brown v. LaCreek Elec. Ass'n. Inc., 939 F.2d 623 (8th Cir. 1991) ("Plaintiff is correct in asserting that evidence not admissible as substantive evidence may come in for purposes of impeachment").

And again, though plaintiff does not desire to do so, this prior testimony would be admissible as admissions of a party-opponent, where Partington is a policymaker that binds the City, as substantive evidence, as to prior inconsistent statements made under oath at a deposition. Fed. R. Evid. 801(d)(1)(A). Similarly, though plaintiff does not intend to read the deposition into evidence, Fed. R. Civ. P. 32(a)(1), also holds that any part of the deposition testimony of a party (Partington as a policymaker is a party) is admissible for "the purpose of contradiction or impeaching the testimony of a deponent or witness." Fed. R. Civ. P. 32(a)(1). See also Codeiro v. Levasseau, 112 F.R.D. 209, 210-211 (D.R.I., 1986).

Defendants contend that the deliberate indifference standard is a high one; however, plaintiff's claims as to training have already been ruled on by the Circuit. Regardless, as described above, Partington's prior statements regarding plaintiff's claims will be evidence that goes to the question whether or not the City and supervisors acted with deliberate indifference, and can be inquired into if need be, for impeachment.

LEISA YOUNG, in her capacity as
Administratrix of the Estate of
Cornel Young Jr.,
By her Attorneys

Robert B. Mann #0153
Mann & Mitchell
One Turks Head Pl., Ste. 610
Providence, RI 02903
(401) 351-5770

Barry Scheck, Esq. #4612
COCHRAN, NEUFELD, & SCHECK
99 Hudson Street, 8th Floor
New York, NY 10013
212-965-9081

Nick Brustin, Esq. #0605
COCHRAN, NEUFELD, & SCHECK
99 Hudson Street, 8th Floor
New York, NY 10013
212-965-9081

## Certification

I hereby certify that a copy of the within document was mailed or delivered to the person or offices of Kevin McHugh, Esq., City Solicitors Office, 275 Westminster St., Suite 200, Providence, R.I. 02903 and Michael Colucci, Esq., Olenn & Penza, LLP, 530 Greenwich Ave., Warwick, RI 02886 on the 18 day of October, 2005.