UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LEISA YOUNG, In her Capacity as Administratrix of the Estate of Cornel Young, Jr. | ) | |
| v. | ) | No. C.A. No. 01-288 S |
| CITY OF PROVIDENCE by and through its treasurer, Stephen Napolitano, et al | ) | |

PLAINTIFF'S OBJECTION TO DEFENDANTS RYAN AND COHEN'S MOTIONS IN LIMINE

Now comes the plaintiff and objects and responds to the defendants Ryan and Cohen's motions in limine. In support of said objection the plaintiff submits the attached memorandum of law.

LEISA YOUNG, in her capacity as
Administratrix of the Estate of
Cornel Young Jr.,
By her Attorneys

Robert B. Mann #0153
Mann & Mitchell
One Turks Head Pl., Ste. 501
Providence, RI 02903
(401) 351-5770

Barry Scheck, Esq. #4612
COCHRAN, NEUFELD, & SCHECK
99 Hudson Street, 8th Floor
New York, NY 10013
212-965-9084

Nick Brustin, Esq. #0605
COCHRAN, NEUFELD, & SCHECK
99 Hudson Street, 8th Floor
New York, NY 10013
212-965-9084

**Certification**

I hereby certify that a copy of the within document was mailed or delivered to the person or offices of Kevin McHugh, Esq., City Solicitors Office, 275 Westminster St., Suite 200, Providence, R.I. 02903 and Michael Colucci, Esq., Olenn & Penza, LLP, 530 Greenwich Ave., Warwick, RI 02886 on the 18 day of October, 2005.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LEISA YOUNG, In her Capacity as Administratrix of the Estate of Cornel Young, Jr. | ) ) ) | |
| v. | ) | No. C.A. No. 01-288 S |
| CITY OF PROVIDENCE by and through its treasurer, Stephen Napolitano, et al | ) ) ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF RESPONSE TO DEFENDANT RYAN AND COHEN'S MOTIONS IN LIMINE**

**A. Promotional Exam Issue**

Plaintiff has submitted a separate memorandum concerning the admissibility of evidence that both Prignano and Ryan admitted to helping specific police officers cheat on promotional exams. That Memorandum is hereby adopted by reference as if set forth herein.

**B. Requirement of Saraiva to Issue "Instruction" to Solitro**

Defendants argue that because the first jury found that Saraiva did not violate Officer Young's constitutional rights, plaintiff is prohibited from offering any evidence concerning the PPD's failure to properly regulate the prospective roles of officers during deadly confrontations. Defendants misinterpret the rationale for plaintiff's evidence and the effect of the first jury's and the Circuit's ruling on this issue.

Plaintiff does not argue, nor could she pursuant to the Circuit's decision, that the defendants'

failure to train Saraiva as to how to perform as the "Senior Officer" is an independent basis of recovery. Rather, plaintiff contends that the defendants failure to train both Solitro and Saraiva concerning the role of the more senior officer was one of many deficiencies in the PPD's training of officers concerning off-duty/on-duty interactions and that the failure to train solitro in particular, was one of many factors which caused, at least in part, Solitro's unconstitutional conduct. Supervisors, including Robert Boehm, one of the range trainers testified that Saraiva had no obligation to take charge of the scene and provide direction to Solitro regardless of how few days Solitro had on the job. Boehm at 246-47. Not surprisingly, both Saraiva and Solitro testified that Saraiva had no obligation to take the lead and Solitro had no obligation to expect that Saraiva would take or to follow Sariava's lead. Saraiva at 221, 243-44, Solitro at 144 Dr. Fyfe, on the other hand, will testify that commonly accepted police practice requires that off-duty protocol and training directs officers that in any dangerous armed confrontation where there is the potential for misidentification, one officer should take the lead in terms of giving commands and controlling the action, particularly where one of the officers is an 8 day rookie. Fyfe Reprt at 8. Dr. Fyfe will testify that the PPD's failure to regulate officers in this regard was contrary to accepted practice and off-duty misidentification is one of the known risks of failing to provide such guidance to officers.

As to the first verdict, plaintiff argued that Saraiva's failure to provide direction to Solitro was one of many improper acts committed by Saraiva, the sum total of which were objectively unreasonable and constituted excessive force. The jury determined that Saraiva did not violate Young's constitutional rights. The jury did not make a specific finding that Saraiva provided

proper instruction to Solitro nor was such a finding necessary to the verdict. For example, the jury could have determined that Saraiva had a reasonable, albeit mistaken, belief that Officer Young posed an immediate serious threat, where as Solitro who "was closer to Cornel than Saraiva and had an unobstructed view" did not. Young v. City of Providence, 404 F.3d 4, 25 (lst Cir. 2005).. Under this scenario, the jury could have determined that Saraiva acted unreasonably when he failed to give Saraiva direction, but his reasonable belief that his partner's life was in danger convinced them that overall his conduct was not unreasonable.

Regardless, plaintiff does not intend to revisit the reasonableness of Saraiva's action. Rather plaintiff intends to demonstrate that Saraiva, Solitro and Young were victims of deliberately indifferent training program concerning avoiding off-duty misidentifications.

Finally, defendants' suggestion that Saraiva and Young's lack of training is irrelevant here is puzzling in light of defendants' specific agreement that they will not object to the introduction of evidence concerning the off-duty training received by all officers, including Saraiva and Young. Defendants have conceded that the training provided to Saraiva and Young, while not admissible to prove causation, is admissible to prove that the PPD and defendants were deliberately indifferent to obvious training needs. See letter, attached as Exhibit A, Young v. City of Providence, 404 F.3d 4, 27, n. 19 (lst Cir. 2005). 1

## C. Prefacing Verbal Commands with Police

---

1 n19 This does not necessarily mean that evidence of Cornel's and Saraiva's lack of training is irrelevant; such evidence might be relevant to show that Solitro's lack of training was part of a policy of not training on on-duty/off-duty interactions, rather than simply an "otherwise sound program [that] has occasionally been negligently administered." Canton, 489 U.S. at 391. We express no view on this question.

Young v. City of Providence, 404 F.3d 4, 27, n. 19 (1st Cir. 2005)

Defendants similarly argue that because the phase I jury found that Saraiva did not violate Officer Young's constitutional rights, the jury necessarily determined that Solitro's failure to preface their commands with the word "police" was reasonable. As described more fully in section B above, defendants mischaracterize plaintiff's basis for introducing this evidence, the effect of the phase I verdict and the Circuit's ruling on these issues.

Plaintiffs contends and will prove that the defendants' failure to train both Solitro and Saraiva that in any armed confrontation, each command should be prefaced with the word "police" was one of many deficiencies in the PPD's training of officers concerning off-duty/on-duty interactions and that the failure to train Solitro in particular, was one of many factors which caused, at least in part, Solitro's unconstitutional conduct.

Solitro and Saraiva stated they violated no protocols or training when they failed verbally to identify themselves as police officers, and their supervisors agreed. Saraiva 130-31; Solitro at trial 76, 10/17/03.. Supervisors confirmed that there was no such training. For example, Chief Prignano testified that it is not always critical to preface each command with police and that under the circumstances in this case, "unless you're blind and you're deaf " you should be able to recognize police presence without a verbal announcement. Prignano at 196-97. Dr. Fyfe, however, will testify that it is important to preface each command during a potentially violent encounter with the word "police" to ensure that everyone is aware that police officers are on the scene, but even more importantly to ensure that everyone present, particularly other police officers knows that a police officer is the person issuing commands. Dr. Fyfe will explain that minimally competent police administrators train officers to always preface commands with

police and to always expect that commands given by other officers will be prefaced by the word "police". Administrators interested in protecting their officers require this identifying command and train on this command so officers have a clear manner of communicating among each other to the exclusion of others in a dangerous fast moving situation. Dr. Fyfe will further explain that this protocol and training is designed, at least in part, to prevent friendly fire incidents. Dr. Fyfe will further testify that in addition to prefacing commands with "police", officers are required and trained to utilize a single, clear command during an armed confrontation for the same reasons. For example, Dr. Fyfe will explain that in New York and other jurisdictions, officers are required, trained and then retrained to use the command "police, don't move". In New York, "police, don't move!" is literally a mantra that is repeated in the off-duty protocols and throughout the off-duty training officers receive. Dr. Fyfe will explain that in fast moving life and death scenarios, reasonable police administrators understand that they must provide their officers clear, precise commands that become instinctual through training, because in times of crisis, such commands save lives. Fyfe Report at 8; exhibits 90-91.

The Circuit specifically relied upon Dr. Fyfe's report, which the Circuit noted was "based on his understanding of standard police practice and his research into other friendly fire shootings Young v. City of Providence, 404 F.3d at 19. Dr. Fyfe will explain that standard police practice requires that officers preface commands with police. Plaintiff should be permitted to prove that the PPD's failure to train Solitro to preface commands with "police" caused - at least in part - his unconstitutional conduct. Regardless, the PPD's failure to clearly train on this issue is certainly evidence of a deliberately indifferent program of off-duty training.

**D. Lights and Sirens**

Plaintiff does not intend to introduce evidence that Saraiva and Solitro failed to use lights and siren.

**E. Witnesses Without Personal Knowledge of Relevant Training**

Defendants argue that plaintiff should be prohibited from presenting any testimony on training from officers who were not present in Solitro's academy. Defendants do not offer any legal or factual support for this argument except to suggest that it is axiomatic. Plaintiffs do intend to present witnesses who were not part of the training programs administered to defendants. In fact, as described above in Section B, all defendants have conceded that they will not object to evidence concerning the training of Officer Young and Officer Solitro as evidence that the defendant's overall training program on off-duty action was deficient.

Moreover, defendants must concede that there is little or no documentation of the off-duty training described by Melaragno and Boehm and contradicted by virtually every other witness including defendant Ryan. The parties are forced to rely on the memories of witnesses to prove the actual scope of training provided to Solitro and to Young and Saraiva. In this regard, Lt Melaragno testified that he provided the same specific 30 minute course regarding off-duty conduct to all recruits since 1987. He testified that the training on off-duty issues remained the same through the shooting and that since 1987, was an integral part of each recruit class. Melaragno at 147, 153. Plaintiff intends to present evidence from various PPD officers who attended PPD academies beginning in 1987 and continuing through the shooting, who remember little or no training on these off-duty issues and no specific course on the topic. Defendants have not presented any legal authority or argument as to why PPD officers cannot testify as to their

personal knowledge of the training they received, which according to Melaragno, was identicial to the training Solitro received. Absent documentation of a course that by all accounts to the extent it was provided should have been documented, such evidence is crucial to plaintiff's case.

Again, defendants simply disregard the Circuit's reliance on this evidence. The Circuit stated, for example:

> Young presented evidence that the general policy of the PPD was to document training, and yet for unclear reasons any on-duty/off-duty training was evidently undocumented. [*59] Further, Ryan stated that he would know of any "substantial" off-duty training that Melaragno supervised. This testimony either acts to contextualize the extent of the training described by Melaragno and Boehm as a proportion of total training or creates a flat conflict with the statements of Melaragno and Boehm. Some officers recalled little or no training on on-duty/off-duty issues. Solitro recalled Range 2000 training, but Melaragno and Commissioner Partington were uncertain about the extent to which Range 2000 actually dealt with off-duty issues. Finally, Boehm and Melaragno themselves disagree about some of the training at issue. In short, there are substantial unresolved issues of fact with respect to the amount of training that the PPD actually gave to officers, including Solitro, on avoiding misidentifications of off-duty officers. The jury could find that there was, at best, very minimal training on these issues, and no real program of training on them at all.

Young v. City of Providence, 404 F.3d at 28.

The Court also stated:

> One PPD police officer, Shane Romano, recalled that there was no training on officers identifying themselves while off-duty. Another officer, Greg Small, mentioned Range 2000 training regarding off-duty altercations. Solitro, when asked whether he had any training on on-duty/off-duty identification issues, also cited some Range 2000 training that he had while at the academy. He recalled no other specific training on off-duty issues, although he agreed that "there may have been some off-duty issues raised here and there in terms of questions and answers but no [specific] course on it." Saraiva recalled some training involving paper cutouts that represented off-duty officers at the range; he noted that this involved no interaction with off-duty officers.

Young v. City of Providence, 404 F.3d at 18.

As the Circuit recognized, the testimony of these officers concerning training is standard, compelling evidence in a Monell case and no basis to exclude their testimony.

**F. Off-Duty Misidentifications**

Defendants argue that plaintiff should be prohibited from introducing evidence of off-duty misidentifications unless plaintiff can prove these misidentifications were actually reported to responsible city officials and unless she can show the misidentifications were similar to the case at bar. Defendants cite no authority for this limitation and, in fact, the authority from the Circuit in this case is directly to the contrary.

First, the Circuit rejected defendants' contention that prior friendly fire incidents are required to demonstrate notice finding:

> Although there was no evidence of a prior friendly fire shooting, a jury could find from the testimony of Commissioner Partington, Melaragno, and Boehm that the department knew that there was a high risk that absent particularized training on avoiding off-duty misidentifications, and given the department's always armed/always on-duty policy, friendly fire shootings were likely to occur. A jury could conclude that the severity of the consequences of a friendly fire shooting forced the department to take notice of the high risk despite the rarity of such an incident. Dr. Fyfe's report could lead the jury to conclude that it was common knowledge within the police community that the risk of friendly fire shootings with an always armed/always on-duty policy was substantial, and it was also common knowledge that particularized training on on-duty/off-duty interactions (and particularly on the risk of misidentifications) was required to lessen this risk. [Footnote omitted]

Young v. City of Providence, 404 F.3d at 28-29.

Second, the Circuit rejected defendants' contention that administrators have actual as opposed to constructive notice and that prior misidentifications were limited to gunfights or violent confrontations stating:

> A finding of deliberate indiffernce requires also that the City have disregarded a known or obvious risk of serious harm from its failure to develop a training program that dealt with off-duty identifications in the [*60] context of its always armed/always on-duty policy. We think the jury could reasonably make such a finding here. Such knowledge can be imputed to a municipality through a pattern of prior constitutional violations. See Brown, 520 U.S. at 407-08; see also Swain v. Spinney, 117 F.3d 1, 11 (1st Cir. 1997); Palmquist, 111 F.3d at 1346. Young does not rely primarily on this sort of notice, although she does have some evidence from which a jury could find that it was common knowledge within the PPD that misidentifications of off-duty officers responding to an incident often occurred in Providence, particularly misidentification of minority officers. It is clear that a jury could find a pattern of knowledge of prior misidentifications and that this was likely to pose a significant risk of harm.

Young v. City of Providence, 404 F.3d at 28.

Futher, the Court said:

> Plaintiff presented numerous reports from police officers of past misidentifications of off-duty personnel in Providence, particularly involving minority officers, and thus, presented evidence that the department was on notice of a misidentification problem. Indeed, both Cornel and his police officer father had been the subject of misidentifications in the past. None of these earlier incidents had a violent or tragic outcome.

Young v. City of Providence, 404 F.3d at 19.

Plaintiff intends to call a number of officers to testify about their personal experiences of being misidentified while off-duty and knowledge of other officers being misidentified including Major Young. Major Young will describe a number of situations where he was misidentified by on-duty officers while he was off-duty or in plainclothes. In an incident that Defendants allude to, Major Young will explain that while driving in an unmarked, but in his view clearly identifiable police car he was stopped and subjected to racial slurs by an on-duty East Providence Police Department Officer. Young dep at 55. In that situation, the on-duty officer used a racial slur and failed to recognize him as a police officer even after Major Young verbally identified himself

as such. Young Dep at 57. Major Young will also describe other examples where he was misidentified while responding to a call in plainclothes and misidentified as a prisoner while transporting another prisoner in court. Young Dep at 81, 85-86. He will further testify that he believed that these experiences provided him personal insight into the dangers of off-duty misidentification, particularly for African-American officers.

In light of Ryan's testimony that even after the shooting, he was not aware of a single incident, even anecdotally, where an off-duty officer was misidentified by an on-duty officer, it is understandable that defendants would like to exclude evidence that other officers were routinely misidentified and this was common knowledge in the PPD long before the shooting. Ryan 30b6 152-53. That concern, however, is not a basis for exclusion and is not justification for defendants to disregard the Circuit's pronouncements on this issue.

Respectfully, defendants' failure to address let alone distinguish the findings of the Circuit concerning this evidence is sufficient basis to reject this motion. Regardless, defendants' argument that plaintiff nees to prove that City officials knew about these prior misidentifications and that these prior mididentifications had to involve violent encounters has no basis in law and should be rejected.

**G. James Weiner - Forensic Pathologist**

Dr. Weiner will testify concerning Officer Young's pain and suffering in the moments leading up to the shooting and continuing through his death. Based upon his many years of experience as a forensic pathologist, Dr. Weiner will explain the physiological effects that Mr. Young likely experienced both before and after he was shot. Dr. Weiner will explain what Mr.

Young experienced when he realized that his brother officers were shooting at him and will further explain the tremendous pain and suffering he experienced when he was shot by Saraiva and Solitro and suffered injuries including a broken back We believe that Dr. Weiner will be able to lay a proper scientific foundation to properly characterize Officer Young as experiencing a state of terror and respectfully suggest that the Court's ruling on that characterization should be reserved for trial..

LEISA YOUNG, in her capacity as
Administratrix of the Estate of
Cornel Young Jr.,
By her Attorneys

Robert B. Mann #0153
Mann & Mitchell
One Turks Head Pl., Ste. 610
Providence, RI 02903
(401) 351-5770

Barry Scheck, Esq. #4612
COCHRAN, NEUFELD, & SCHECK
99 Hudson Street, 8th Floor
New York, NY 10013
212-965-9081

Nick Brustin, Esq. #0605
COCHRAN, NEUFELD, & SCHECK
99 Hudson Street, 8th Floor
New York, NY 10013
212-965-9081

**Certification**

I hereby certify that a copy of the within document was mailed or delivered to the person or offices of Kevin McHugh, Esq., City Solicitors Office, 275 Westminster St., Suite 200, Providence, R.I. 02903 and Michael Colucci, Esq., Olenn & Penza, LLP, 530 Greenwich Ave., Warwick, RI 02886 on the 18 day of October, 2005.

COCHRAN NEUFELD & SCHECK, LLP
99 Hudson Street
New York, New York 10013

Tel: 212-965-9081
Fax: 212-965-9084

Johnnie L. Cochran, Jr.
Peter J. Neufeld
Barry C. Scheck
Nick J. Brustin

Debi Cornwall
Archana Prakash
Ramzi Kassem

October 3, 2005

**BY FAX: (401) 351-7596**
Kevin F. McHugh, Esq.
City of Providence
Law Department
275 Westminster Street, Suite 200
Providence, RI 02903

**BY FAX: (401)737-5499**
Michael J. Colucci, Esq.
Olenn & Penza, LLP
530 Greenwich Avenue
Warwick, RI 02886

Dear Kevin and Michael,

As discussed during my telephone conversation with Kevin on Friday, the plaintiff intended to make an in limine motion for the introduction of the evidence of deliberate indifference discussed by the First Circuit in footnote 19 of their most recent opinion in this case. *See Young v. City of Providence*, 404 F.3d 4, 27 n.19 (1st Cir. 2005). The First Circuit reasoned that evidence pertaining to Cornel Young's and Officer Saraiva's lack of training might be relevant to prove policymakers' deliberate indifference.

Based on your assurance during Friday's conversation that you have discussed this matter and that the defendants will not object to the introduction of evidence on failure to train on off-duty issues generally – including evidence pertaining to Young's and Saraiva's training – the plaintiff will not make her aforementioned motion. Please contact me immediately if you disagree with any of the above.

Sincerely,

Nick Brustin

EXHIBIT A