UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LEISA YOUNG, In her Capacity as Administratrix of the Estate of Cornel Young, Jr. | ) ) ) | |
| v. | ) | No. C.A. No. 01-288 S |
| CITY OF PROVIDENCE by and through its treasurer, Stephen Napolitano, et al | ) ) ) | |

PLAINTIFF'S OBJECTION TO MOTION OF DEFENDANTS CITY OF PROVIDENCE AND URBANO PRIGNANO, JR. TO EXCLUDE EXHIBITS NUMBERED 30, 32, 34 THROUGH 55, 90 AND 91 IN THE PLAINTIFF'S LIST OF EXHIBITS SUBMITTED WITH HER PREVIOUS PRE-TRIAL MEMORANDUM

Now comes the plaintiff and objects and responds to the motion of defendants City of Providence and Urbano Prignano, Jr. to exclude exhibits numbered 30, 32, 34 through 55, 90 and 91 in the plaintiff's list of exhibits submitted with her previous pre-trial memorandum. In support of said objection the plaintiff submits the attached memorandum of law.

LEISA YOUNG, in her capacity as
Administratrix of the Estate of
Cornel Young Jr.,
By her Attorneys

Robert B. Mann #0153
Mann & Mitchell
One Turks Head Pl., Ste. 501
Providence, RI 02903
(401) 351-5770

Barry Scheck, Esq. #4612
COCHRAN, NEUFELD, & SCHECK
99 Hudson Street, 8th Floor
New York, NY 10013
212-965-9084

Nick Brustin, Esq. #0605
COCHRAN, NEUFELD, & SCHECK
99 Hudson Street, 8th Floor
New York, NY 10013
212-965-9084

**Certification**

I hereby certify that a copy of the within document was mailed or delivered to the person or offices of Kevin McHugh, Esq., City Solicitors Office, 275 Westminster St., Suite 200, Providence, R.I. 02903 and Michael Colucci, Esq., Olenn & Penza, LLP, 530 Greenwich Ave., Warwick, RI 02886 on the 18 day of October, 2005.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LEISA YOUNG, in her Capacity as Administratrix of the Estate of Cornel Young, Jr. | ) ) ) | |
| v. | ) | No. C.A. No. 01-288ML |
| CITY OF PROVIDENCE by and through its treasurer, Stephen Napolitano; et. al | ) ) ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS CITY OF PROVIDENCE AND URBANO PRIGNANO, JR'S MOTION IN LIMINE FOR THE EXCLUSION OF EXHIBITS NUMBERED 30 THROUGH 32, 34 THROUGH 55, 90, AND 91**

## I. Plaintiff's Exhibits Concerning Common Police Practices on Off-Duty Issues Which Were Properly Relied Upon by Plaintiff's Expert Dr. James Fyfe Should be Admitted into Evidence in this Trial

### A. General

Defendants have asked the Court to exclude the exhibits relied upon by plaintiff's expert, Dr. James Fyfe, The Director of Training for the New York City Police Department ("NYPD"). Defendants argue that these exhibits should not be admitted because they have not been authenticated, are hearsay, are duplicative and cumulative, apply to a larger police department and are thus irrelevant. The defendants also argue that plaintiff "cannot rely upon expert opinion" testimony to demonstrate a "deliberately indifferent municipal policy, but rather must demonstrate a prior pattern of similar incidents before any such evidence will even become relevant . . ." Defs. Memo at 6. Plaintiff will address defendants arguments in turn. However, it is important to note at the outset that defendants do not appear to have amended this motion in

light of the Circuit's detailed findings.[1] The Court of Appeals stated:

> In fact, the Court has suggested that liability without such a pattern will be [*61] appropriate "in a narrow range of circumstances," where "a violation of [a] federal right[]" is "a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." Brown, 520 U.S. at 409. . . We think a jury could find deliberate indifference by virtue of this route here.

Young v. City of Providence, 404 F.3d 4, 28 (1st Cir. 2005).

The Court has also said:

> Plaintiff's expert, Dr. James Fyfe, wrote a report for this case based on his understanding of standard police practice and his research into other friendly fire shootings. Fyfe is the Deputy Commissioner for Training of the New York City Police Department and an authority on police tactics and training, with a doctorate in criminal justice from the State University of New York at Albany. He has reviewed more than 10,000 police shootings over the course of his career. Fyfe wrote that always armed/always on-duty policies such as the PPD policy at issue here were well-known to carry a high risk of "fatal consequences for off-duty officers," largely because "minimally competent police administrators have long recognized that there is a great distinction between officers' capacity to act forcibly while on-duty and their ability to do so off-duty." Thus, always armed/always on-duty policies "must be accompanied by training such as that described in [his research], and that specifies a [*34] protocol designed to avoid apparent friendly fire tragedies such as occurred in this case." Absent such training, it can be expected that on-duty officers will mistake off-duty officers attempting to intervene in a situation for suspects, which will lead to unnecessary bloodshed.

Young v. City of Providence, 404 F.3d at 19.

Further, the Court has said:

> A jury could conclude that the severity of the consequences of a friendly fire shooting forced the department to take notice of the high risk despite the rarity of such an incident. Dr. Fyfe's report could lead the jury to conclude that it was common knowledge within the police community that the risk of friendly fire shootings with an always armed/always on-duty policy was substantial, and it was also common knowledge that particularized training on on-

---

[1] Defendants did not even appear to remove the portions of their prior motion addressing the Fyfe's testimony concerning phase I or portions relying on their summary judgment briefs which were specifically rejected by the Circuit.

duty/off-duty interactions (and particularly on the risk of misidentifications) was required to lessen this risk. n. 20.

Young v. City of Providence, 404 F.3d at 29.

The footnote reads:

The district court declined to consider the Fyfe report on summary judgment both because it was unsworn and because it was conclusory. See Young, 301 F. Supp. 2d at 177. The report was sworn to with an affidavit, and thus that ground for disregarding the report was error. The aspects of the report on which we rely could properly have been testified to by Fyfe.

Young v. City of Providence, 404 F.3d 29, n. 20.

The Circuit specifically found that plaintiff need not demonstrate a prior pattern of similar incidents to prevail and that the "standard police practices" which defendants seek to exclude were a proper basis for Fyfe's opinion. Plaintiff will not address and still does not understand defendants regurgitated arguments concerning the quantum and quantity of proof for a Monell claim except to state again the Circuit specifically rejected these arguments.[2] As described below, defendants' other arguments are equally unavailing, and these exhibits should be admitted. ,.

B. **Admissibility of Exhibits**

Defendants' argue that the plaintiff's exhibits that will be used in conjunction with Dr. Fyfe's

[2] Rather than address the Circuit's ruling in this case, defendants cite to Holland v. City of Houston, 41 F.Supp. 2d 678 (S.D. Tex. 1999), where the court had concluded that "there is also no evidence that the City was aware of any problems arising from the training of off-duty police officers employed at such businesses or knew that the training of such officers was likely to endanger the constitutional rights of its citizens." Id. at 708. In contrast, in this case, Commissioner Partington has testified that he knew of the risk that the lack of training posed to other officers, thought that a new policy had been put in place, and was mistaken as to what the policy was. Prignano, on the other hand, adamantly refused to change the off-duty policy even after the Young shooting. This Southern District of Texas case law is irrelevant to whether Dr. Fyfe's testimony or the basis for his testimony will be admissible, particularly in light of this Circuit's ruling in this case.

testimony are inadmissible. Without citing any specific objections to specific exhibits, the defendants make six blanket objections - they state the exhibits are inadmissible because they have not been authenticated, they are hearsay, they are duplicative and therefore prejudicial, they are immaterial under the relevant legal standard, they are inadmissible pursuant to Fed.R.Evid. 403 because they apply the standard from the New York Police Department (NYPD) to the Providence Police Department (PPD), and finally, they are inadmissible pursuant to Soller v. Moore, 84 F.3d 964 (7th Cir. 1996).

1. **Rule 403 - Danger of Confusion**

Defendants argue that the use of training materials and practices from the NYPD is prejudicial because "unlike the NYPD - the PPD had no "friendly fire incidents" in its entire history until the happening of the single incident which is the subject of the instant lawsuit," and because the NYPD training materials come from a large department and will thus necessarily confuse the jury and should be excluded pursuant to Fed. R. Evid. 403. First, as described above in Part A, the Circuit has ruled that demonstrating that friendly fire incidents occurred in Providence is not necessary to meet the deliberate indifference standard. Young Decision at 60-61; Second, other than wholly unsupported conjecture by counsel for defendants, defendant have not proffered any evidence for the proposition that the materials relied upon by Dr. Fyfe in reaching his opinions should be excluded because they involve larger departments. In fact, all of the evidence is to the contrary and this is precisely the type of evidence that is typically utilized to prove a Monell training claim.. See, e.g., Thompson v. City of Meriden, 1999 WL 301693, *10 (D.Conn 1999) ("Deliberate indifference also may be shown through expert testimony that a practice condoned by the defendant municipality was contrary to the practice of most police departments").

Dr,. Fyfe explained in his report and, if permitted, will further explain at trial that the protocols, training materials, literature, studies and model policies from places like New York and Philadelphia and the International Association of Chiefs of Police ("IACP"), are materials that are commonly relied upon by minimally competent police administrators in the industry and apply equally in large and small urban police departments. Before listing the documents that Fyfe relied upon in his report and to which defendants now object, Fyfe stated:

> Such off-duty encounters, and the risk that they might be interrupted by on-duty police, are a well-recognized hazard of urban policing for which officers must be carefully schooled by policy and training. As demonstrated below, they were well-recognized in Providence, as well. The standards for such encounters are defined in the following documents, which I have attached in chronological order:
> Fyfe Report at 5

Dr. Fyfe will explain that he provided the NYPD materials as examples of these training, because as the Director of training at the NYPD he had ready access to these documents and they are prime examples of the industry standard.. He will explain, as he did in his report, that "the research and principles described in these materials dictate" the steps that reasonable police administrators take to protect their officers and that the training and protocols are as important if not more important in a place like Providence, where the PDD maintained the most dangerous off-duty action policy imaginable. Fyfe Report at 6-7.

As described above, the Circuit has already found that "Dr. Fyfe's report's" which expressly relied upon the documents to which defendants now object "could lead the jury to conclude that it was . . . also common knowledge that particularized training on on-duty/off-duty interactions (and particularly on the risk of misidentifications) was required to lessen this risk." Young v. City of Providence, 404 F.3d 29, n. 20. Although defendants' counsel suggest these documents are

irrelevant, the defendants themselves agree with Dr. Fyfe. Commissioner Partington, for example, agreed that he had read or was familiar with a number of the materials cited by Dr. Fyfe, that they were from recognized authorities in the law enforcement community and that minimally competent police administrators would be aware of them.. Partington 209-210. He further agreed that the PPD was responsible to provide all the protocols and training outlined in Fyfe's report which were expressly derived from " the research and principles described in his material" to which defendants now object. Fyfe Report at p6, Partington at 210. In fact, once Prignano, who opposed these changes, left the force, the PPD attempted to implement the same type of training program utilized in New York. For example, the PPD created a protocol that at least attempted to delineate the circumstances and manner which officers should intervene off-duty, a specific, documented training class on the protocols and even a video, much like the videos utilized in New York, designed to reinforce the protocol and classroom training provided.

Further, defendants own expert, Fred Taylor, was questioned extensively concerning the scope of his analysis and review in this case and he did not express any concerns with Dr. Fyfe's opinions or the basis for his opinions. Mr. Taylor testified that he looked at but did not review Dr. Fyfe's report, and more specifically that he "didn't go into what he referenced," because "it didn't have anything to do with what [he] was asked to do." Taylor at 14-15 In fact, Mr. Taylor testified that he based his own findings on standards established by national police organizations such as CALEA and that he relied at least in part on training provided by the Miami Dade Police Department, one of the largest police departments in the country. Taylor at 163. In connection with his report in this case, Taylor referenced the Miami Dade Police Department Curriculum as documents he reviewed and presumably relied upon in preparing his report.

Despite the above, defendants argue that these exhibits are inadmissible pursuant to Soller v. Moore, 84 F.3d 964 (7th Cir. 1996). In that case, the court upheld the lower court's decision to exclude the plaintiff's testimony of the model, IACP standards on preseizure actions in order to show that the defendant officer did not use reasonable force. The court found that because the question in the case was whether the officer had used reasonable force, and not whether the officer should have stopped the plaintiff's son in the first place, that specific IACP policy, and the testimony of the police official concerning that IACP policy was not relevant to the issue in the case. Id. at 968-9. The Seventh Circuit upheld this decision and stated that the IACP evidence had "nothing to do with the key issue," because it focused only on preseizure activity. That is distinguishable from this case, where the policies and practices to which Fyfe will testify are directly relevant to whether the PPD provided constitutionally inadequate training on off-duty issues. and whether the PPD policy was unconstitutional. The plaintiff is entitled to offer evidence of model police practices and practices of other police departments in order to prove her case. See Voutour v. Vitale, 761 F.2d 812, 821-23 (1st Cir. 1985); Zuchel v. City of Denver, 997 F.2d 730, 739-40 (10th Cir. 1993); United States v. Mohr, 318 F.3d 613 (4th Cir. 2003); Larez v. City of Los Angelos, 946 F.2d 630 (9th Cir. 1991); Yates v. City of Cleveland, 941 F.2d 444 (6th Cir. 1991). Dr. Fyfe, Commissioner Prignano, defendants expert Taylor and the Circuit all agree that the documents relied upon by Fyfe are directly relevant and there is no evidence suggesting a danger of confusion or unfair prejudice.

2. **Authenticity**

The exhibits that will be offered at trial will be properly authenticated by Dr. Fyfe who relied upon these materials in his own NYPD training, his widely accepted writings and in his training and consulting with other departments and police organizations nationwide. Dr. Fyfe is very familiar or

actually wrote the exhibits and can lay the proper foundation to authenticate the exhibits he will use throughout his testimony. To the extent that there remains a question about the authenticity of these exhibits, this motion is better renewed in the context of the trial. Defendants' general assertion that these exhibits have not been authenticated, without citing which exhibits and whether the exhibits are capable of authentication is premature. Freeman v. Package Machinery Co., 865 F.2d 1331, 1337 (1st Cir. 1988) (admissibility questions are often better judged "in the milieu of the trial proper" it can be "too great a handicap to bind a trial judge to a ruling on a subtle evidentiary question ... outside a precise factual context.'") (internal citations omitted).

3. **Hearsay**

These exhibits are not hearsay as they are not being offered for the truth of the matter asserted in the exhibits themselves. Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 575 (1st Cir. 1989) ("Fed.R.Evid. 801(c) defines hearsay as 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'"). Specifically, plaintiff offers these exhibits to demonstrate commonly accepted practices concerning off-duty protocols and training in the police community at large, and what training and protocols were actually documented and taught, not for the truth or accuracy of the words therein. They are not offered to prove the truth of what is contained in them, but are offered to demonstrate that alternative training and protocols were being offered at other departments. Similarly, the articles and studies , to the extent they will be offered into evidence are not being offered for the truth but only to show that PPD supervisors and policy-makers, in addition to Partington, were or should have been aware that such information existed.and was available to guide PPD officers long before Officer Young was shot and killed.. See, e.g. Foster-Miller v. Babcock & Wilcox Canada, 210 F.3d 1,13 (1st Cir. 2000)

(evidence admitted for any purpose other than for the truth of the matter asserted is not hearsay and is admissible) (emphasis added). The defendants general, unsupported charge that these exhibits are hearsay, without stating which exhibits are hearsay and how, should be rejected.

4. **Duplicative/Cumulative**:

Plaintiff reserves the right to offer any or all the exhibits on her pretrial list, but her intention is to present Dr. Fyfe's testimony in a clear and succinct manner, with only a subset of the listed exhibits and only as many exhibits as necessary. This objection should be overruled until trial, at which point the defendants can determine whether they need to object to any exhibits as duplicative or cumulative. Freeman, 865 F.2d at 1337.

5. **Materiality**

Defendants argument that the exhibits are inadmissible because they are "immaterial under the principles applicable to excessive force claims" is merely another attempt to reargue the summary judgment motions and what the applicable standards of supervisory and Monell liability are. As discussed in Part A, above, not only has this argument has been rejected by this Court, but it also has no bearing on the admissibility of the exhibits offered in conjunction with Dr. Fyfe's testimony. Further, courts have accepted Dr. Fyfe's testimony in cases in order to determine how reasonable officers act, whether police training procedures were appropriate and whether inappropriate training and supervision caused the officers to use excessive force. See, e.g., Voutour v. Vitale, 761 F.2d 812, 821-23 (1st Cir. 1985) (allowing Fyfe to testify that the police training at the time of incident was inadequate and a direct cause of the incident); Zuchel v. City of Denver, 997 F.2d 730, 739-40 (10th Cir. 1993) (relying on Fyfe's testimony to establish the inadequacy of the police training at the time of incident and its connection to the shooting); United States v. Mohr, 318 F.3d 613 (4th Cir.

2003) (allowing Fyfe to testify that the use of force in the case was not in accord with current police practices, and was more than what was required); Larez v. City of Los Angelos, 946 F.2d 630 (9th Cir. 1991) (relying on Fyfe to testify establish flaws in police internal investigation and disciplinary procedures); Yates v. City of Cleveland, 941 F.2d 444 (6th Cir. 1991) (allowing Fyfe to testify to inadequate training, supervision and police conduct and linking such training to constitutional violation suffered by plaintiff).

LEISA YOUNG, in her capacity as
Administratrix of the Estate of
Cornel Young Jr.,
By her Attorneys

Robert B. Mann

Robert B. Mann #0153
Mann & Mitchell
One Turks Head Pl., Ste. 610
Providence, RI 02903
(401) 351-5770

Robert Mann for

Barry Scheck, Esq. #4612
COCHRAN, NEUFELD, & SCHECK
99 Hudson Street, 8th Floor
New York, NY 10013
212-965-9081

Robert Mann for

Nick Brustin, Esq. #0605
COCHRAN, NEUFELD, & SCHECK
99 Hudson Street, 8th Floor
New York, NY 10013
212-965-9081

**Certification**

I hereby certify that a copy of the within document was mailed or delivered to the person or offices of Kevin McHugh, Esq., City Solicitors Office, 275 Westminster St., Suite 200, Providence, R.I. 02903 and Michael Colucci, Esq., Olenn & Penza, LLP, 530 Greenwich Ave., Warwick, RI 02886 on the 18 day of October, 2005.