**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| Leisa Young, in her capacity as Administratrix of the Estate of Cornell Young, Jr. | : | |
| v. | : | Case No. 01-288 S |
| City of Providence, by and through Its treasurer, Stephen Napolitano | : | |

**MOTION TO QUASH, OR, IN THE ALTERNATIVE,**
**MOTION FOR A PROTECTIVE ORDER**

Now comes William Ferland, in his capacity as an Assistant Attorney General for the State of Rhode Island, and respectfully requests that this Court quash a subpoena served upon him on November 14, 2005, a copy of which is attached hereto. In the alternative, Movant prays that the scope of any examination be limited, based on the privileged nature of the information sought. A memorandum in support hereof is attached.

Respectfully Submitted,

The State of Rhode Island and
William Ferland,

By their Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

Rebecca Tedford Partington #3890
Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2293
Fax: (401) 222-2995

## CERTIFICATION

I hereby certify that on the 14th day of November, 2005 I faxed documents to the following attorneys of record:

Robert B. Mann, Esquire
Mann & Mitchell
One Turks Head Place, Suite 610
Providence, RI 02903

Kevin McHugh
Providence City Solicitor's Office
25 Dorrance Street
Providence, RI 02903

Michael J. Colucci, Esquire
Olenn & Penza
530 Greenwich Avenue
Warwick, RI 02886

Melina DiTonzo [signature]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| Leisa Young, in her capacity as Administratrix of the Estate of Cornell Young, Jr. | : | |
| v. | : | Case No. 01-288 S |
| City of Providence, by and through Its treasurer, Stephen Napolitano | : | |

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH, OR IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

Now come the Rhode Island Department of Attorney General and William Ferland, in his capacity as an Assistant Attorney General, and pursuant to Federal Court Rules of Civil Procedure 45 (C) hereby moves that a subpoena served upon William Ferland, requiring his presence before this Court on November 15, 2005 at 9:00 a.m., be quashed, or, in the alternative, that a protective order issue. As grounds therefore, Movants would show as follows:

In January of 2000, William Ferland was the Chief of the Criminal Division of the Department of Attorney General. In that capacity, he wrote a letter, which is attached hereto as Exhibit "A". On May 29, 2003, Ferland was deposed in the present case. During that deposition, counsel repeatedly inquired into the mental deliberations that took place in framing that letter. Ferland, through counsel, declined to respond as the questions called for disclosure of privileged information. No motion to compel was ever filed. At this time, Ferland, and the State of Rhode Island, request that the subpoena be quashed entirely, or, in the alternative, that the questioning be limited to avenues of inquiry that do not call for the disclosure of sensitive and privileged information.

**Any Testimony Regarding the Thought Process, Impressions or Decisions of Members of the Department of Attorney General Regarding the Institution of Criminal Charges is Protected by the Deliberative Process Privilege.**

During the May 29 deposition, questions were asked such as:

Q: What factors do you consider pursuant to policy in determining whether or not a matter should go to a grand jury or receive further investigation? (p. 6)

Q: Could you tell me what you intended to convey in writing this second paragraph in this letter? (p. 11)

Q: Did you have any concerns based on your review of the evidence and your communications with your subordinates regarding Officer Saraiva's use of deadly force in this incident? (p. 15)

Mr. Ferland was instructed not to answer such questions, based upon the privileged nature of any response.

In Messenger v. Ingham County Prosecutor, 591 N.W.2d 393 (Mich. 1998), that Court wrote that:

> ...public policy imperatives for ensuring the effective functioning of the prosecutor's office militate against requiring prosecutors to submit to oral discovery concerning their work on a particular case. ... 'Department heads and other similarly high-ranking officials should not be compelled to personally give testimony by deposition unless a clear showing is made that such a proceeding is essential to prevent prejudice or injustice to the party who would require it.'

Id. at 646-647.

Permitting unrestricted access to the Attorney General's investigation and potential pursuit of criminal charges is prohibited by the deliberative process privilege. Federal courts have long recognized a policy against exploring into the mental process of governmental decision makers. N.O. v. Callahan, 110 F.R.D. 637, 642 (D. Mass. 1986); Gomez v. City of Nashua New Hampshire, 126 F.R.D. 432 (D.N.H. 1989). This

privilege is known as the "governmental," or "deliberative process" privilege. Rodgers v. Hyatt, 91 F.R.D. 399, 404 (D. Colorado 1980); Kinoy v. Mitchell, 67 F.R.D. 1, 10-11 (S.D.N.Y. 1975). The purpose of this long-standing privilege is to prevent injury to the quality of governmental decisions. The United States Supreme Court has described the scope and rationale of the privilege as follows:

> the cases uniformly rest the privilege on the policy of protecting the 'decision making process of government agencies and focus on documents' reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decision and policies are formulated.

N.L.R.B. v. Sears Roebuck and Company, 421 U.S. 132, 150 (1975) (citations omitted).

Under the deliberative process privilege, the opinions, recommendations, and evaluations that may or may not have been made by the Attorney General, or any other individual within the Department of Attorney General, cannot be the subject of inquiry. The parties should be precluded from delving into prosecutorial decisions made during the investigation of the case and the reasoning as to the filing or not filing of criminal charges. Such disclosure would improperly divulge mental process protected by the privilege and seriously impede the continuing ability of the Department of Attorney General to do its job.

The deliberative process privilege promotes candor in internal government deliberations and decisions. The purpose of the privilege is to promote the public interest by encouraging a free flow of communication within the government regarding the formulation of policy. The privilege "encourages frank discussion of ideas and policies, thereby ensuring the quality of governmental decision making." Mobil Oil Corp., v. Department of Energy, 102 F.R.D. 1, 5 (N.D.N.Y. 1983) (citing

NLRB. v. Sears, Roebuck & Co., supra.). Prosecutors should not be considering the possibility that, years later, they will be called to discuss their mental processes when determining whether to bring criminal charges in a case.

The Attorney General must have the benefit of the free and candid input of attorneys and staff in the Department in determining the relative merit and the decision to institute criminal charges. Thus, all mental deliberations that went into the penning of the January 6, 2000 letter are protected by the deliberative process privilege.

The Court should also note that there has been a long accepted intolerance towards judicial inquiry into the process by which government litigation decisions are formulated. For example, in United States v. American Tel. and Tel. Co., 524 F.Supp. 1381, 1389 (D.D.C. 1981) the court held that United States Justice Department attorneys could not be interrogated as to why they changed their position in a lawsuit. One of the leading cases on this matter is Carl Zeiss Shiftung v. V.E.B. Carl Zeiss, Jenna, 40 F.R.D. 318 (D.D.C. 1966) aff'd sub nom.V.E.B. Carl Zeiss, Jenna v. Clark, 384 F.2d 979 (D.C. Cir. 1967) cert. denied 389 U.S. 952 (1967), where the court notes "the privilege subserves a preponderating policy of frank expression and discussion among those whom rests the responsibility of making the determinations that enable government to operate . . ." Id. at 324. The court went on to note that in order for the department to function adequately, it "must depend heavily upon candid exchange of ideas, not only among its own staff but also, particularly because of the institutional nature of its decisions, with other agencies whose interests are involved. Id. at 324-325.

**The Law Enforcement Privilege Protects Prosecutorial Discretion and Decision Making Of The Department of Attorney General**

Any information pertaining to the Attorney General's investigation, impressions and decision whether to file criminal charges in any particular case is protected by the law enforcement privilege.

Pursuant to Rule 26(b) of the Federal Rules of Civil Procedure "Privileged matters are, of course, outside the scope of discovery." Dowd v. Calabrese, 101 F.R.D. 427, 430 (D.D.C. 1984). The law enforcement privilege is among the panoply of privileges, "routed in common sense as well as common law, . . . [which] share with each other and the constitutional privileges, the common matrix of pragmatic adjustment to the needs of sound government." Black v. Sheridan Corporation of America, 564 F.2d 531, 542 (D.C. Cir. 1977).

The law enforcement privilege has been incorporated into various state and federal Freedom of Information Acts. Its purpose:

> . . . is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.

In re: Dept. of Investigations of City of New York, 856 F.2d 481, 484 (2nd Cir. 1988) (Emphasis added). Application of this privilege is committed to the sound discretion of the trial court, Brown v. Thompson, 430 F.2d 1214, 1216 (5th Cir. 1970), United States v. Green, 670 F.2d 1148, 1156 (D.C. Cir. 1981), and may be interpreted "in the light of reason and experience." Fed. R. Evid. 501. The privilege is qualified, rather than absolute. When the claim of privilege is made, the demanding party has the burden

of showing his or her need for disclosure. In addressing whether or not disclosure should be made the court should address the following issues:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

Friedman v. Bache Halsey Stuart Shields, Inc., 738 F.2d 1336, 1345 (D.C. Cir. 1984).

**The Testimony Seeks to Elicit Attorney Work Product**

The testimony sought to be elicited during the deposition, and presumably at trial, concerns the mental strategies and thought processes of the Chief of the Criminal Division in Rhode Island's Department of Attorney General. Specifically, they seek testimony concerning why certain action was or was not taken by Ferland. In State v. Usenia, 599 A.2d 1026 (R.I. 1991), a prosecutor's notes were deemed to be attorney work product, immune from discovery. The privilege extends to attorneys' mental impressions, opinions or legal theories concerning specific litigation from disclosure in discovery. *See,* Protection from Discovery of Attorney's Opinion Work Product Under Rule 26(b)(3), Federal Rules of Civil Procedure, 84 A.L.R. Fed. 779. Testimony concerning the inherent prosecutorial function is likewise privileged. This is

quintessentially immune from any inquiry as attorney work product, thought processes and strategies. The arguments set forth above apply with equal force to the instant area of concern.

**Conclusion**

The testimony sought is, in large part, protected from disclosure by the law enforcement privilege, the deliberative process privilege, and constitutes attorney work product. The Court should not allow such inquiry.

**WHEREFORE**, the State of Rhode Island and William Ferland pray that the subpoena be quashed, or that a Protective Order be granted.

Respectfully Submitted,

The State of Rhode Island and
William Ferland,

By their Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

Rebecca Tedford Partington
Rebecca Tedford Partington #3890
Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2293
Fax: (401) 222-2995

**CERTIFICATION**

I hereby certify that on the 14th day of November, 2005 I faxed documents to the following attorneys of record:

Robert B. Mann, Esquire
Mann & Mitchell
One Turks Head Place, Suite 610
Providence, RI 02903

Kevin McHugh
Providence City Solicitor's Office
25 Dorrance Street
Providence, RI 02903

Michael J. Colucci, Esquire
Olenn & Penza
530 Greenwich Avenue
Warwick, RI 02886

Melina DiFonzo

AO88 (Rev. 1/94) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

LEISA YOUNG, In her Capacity as Administratrix of the Estate of Cornell Young, Jr.

V.

CITY OF PROVIDENCE by and through its treasurer, Stephen Napolitano

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 01-288 S

TO: William Ferland

YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| United States District Court, District of Rhode Island<br>One Exchange Terrace<br>Providence, RI 02903 | 2 |
| | DATE AND TIME<br>11/15/05 @ 9:00 AM |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| | |

_ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Robert B. Mann | 11-7-05 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Robert B. Mann, 610 Turks Head Place, Providence, RI 02903 (401) 351-5770

A True Copy attest
Fed Process Server
R Bourque
6013
11-14-05

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

RECEIVED CHIEF'S OFFICE
10 PM 2:28

State of Rhode Island and Providence Plantations
DEPARTMENT OF ATTORNEY GENERAL
150 South Main Street, Providence, RI. 02903
(401) 274-4400
TDD (401) 453-0410

*Sheldon Whitehouse, Attorney General*

PLAINTIFF'S EXHIBIT

January 6, 2000

Colonel Urbano Prignano
Providence Police Department
209 Fountain Street
Providence, Rhode Island 02903

**In Re: Officer Involved Shooting**

Dear Colonel Prignano:

The Criminal Division of the Department of Attorney General was asked to review an officer involved shooting that occurred on September 18, 1999 involving [redacted] Sergeant Robert Bennett presented this matter to our Department. A review of the materials provided revealed that [redacted] was the victim of an assault in the area of Westminster and Winter Streets. Subsequent to this assault [redacted] discharged two shots from his service weapon. One of these rounds struck his assailant, [redacted] in the leg.

After reviewing the relevant witness statements and police reports we have determined that there is insufficient evidence to prove a criminal charge beyond a reasonable doubt. This conclusion should not be construed to mean that [redacted] use of deadly force was appropriate or even warranted.

Sincerely yours,

William J. Ferland
Assistant Attorney General
Division Chief
Criminal Division

Exhibit "C"